AARON, J.
*1154 I.
INTRODUCTION
Marlene Baker LaBerge, a 73-year-old woman, was a resident and patient of a 24-hour skilled nursing facility owned by Italian Maple Holdings, LLC dba La Paloma Healthcare Center (La Paloma). Approximately a week after LaBerge arrived at the facility, La Paloma's staff presented LaBerge with two arbitration agreements that included language required by Code of Civil Procedure [1] section 1295, subdivision (c). Section 1295, subdivision (c) requires such agreements to include a 30-day "cooling off" period, during which the parties to the agreement may rescind it. Ten days after LaBerge signed the agreements (and therefore, prior to the expiration of the statutorily-required 30-day rescission period), LaBerge passed away.
*1155 LaBerge's heirs, Paul LaBerge, Suzanne Marx, and Talmadge Baker (collectively Plaintiffs) sued La Paloma and Plum Healthcare, LLC (together Defendants) for elder abuse, violations of the Patient's Bill of Rights as codified at Health and Safety Code section 1430, negligence, and wrongful death. In response, Defendants filed a petition to compel arbitration based on the two arbitration agreements that LaBerge had executed. The superior court denied the petition to compel arbitration, relying on Rodriguez v. Superior Court (2009) 176 Cal.App.4th 1461, 98 Cal.Rptr.3d 728 ( Rodriguez ) to conclude that the agreements were not effective until the 30-day rescission period passed without either party rescinding the agreements; because LaBerge died before the expiration of the 30-day rescission period, the agreements could not be given effect.
On appeal, Defendants contend that the trial court erred in concluding that the agreements were not effective until after the 30-day rescission period. They argue that this court should decline to follow Rodriguez , supra , 176 Cal.App.4th 1461, 98 Cal.Rptr.3d 728 because that case is factually distinguishable from the instant matter, and further contend that the Rodriguez court erroneously interpreted section 1295, subdivision (c). Alternatively, *890 Appellants maintain that this court should follow the recent case of Scott v. Yoho (2016) 248 Cal.App.4th 392, 204 Cal.Rptr.3d 89 and conclude that the 30-day rescission period contained in section 1295, subdivision (c) violates the Federal Arbitration Act (FAA) and is thus preempted.
We conclude that the trial court erred in interpreting section 1295, subdivision (c), and that the arbitration agreements are valid and enforceable. In reaching this conclusion, we disagree with the court's analysis in Rodriguez , supra , 176 Cal.App.4th 1461, 98 Cal.Rptr.3d 728. Section 1295, subdivision (c) establishes that an arbitration agreement executed by the parties "governs ... until or unless" either party rescinds within the 30-day rescission period. In this case, the parties entered into two agreements that conform with the requirements of section 1295, and that specifically provide that they become effective upon their execution . Pursuant to the plain language of section 1295, subdivision (c), the terms of those agreements governed the parties' relationship upon their execution; the fact that one signatory died before the expiration of the statutory 30-day rescission period does not render the terms of the parties' agreements unenforceable in the absence of other grounds for not enforcing them.[2]
We therefore reverse the trial court's order denying Defendants' motion to compel arbitration.
*1156 II.
FACTUAL AND PROCEDURAL BACKGROUND
LaBerge was admitted to La Paloma's 24-hour care nursing facility on September 18, 2014. At that time, she was diagnosed with high blood pressure and osteomyelitis (a bone infection).
A week after LaBerge's admission to the nursing facility, staff from the facility presented LaBerge with two arbitration agreements. The first one was entitled "Attachment F [¶] Arbitration of Medical Malpractice Disputes [¶] (Optional for Residents and Facility)" (Attachment F, some capitalization omitted). The second one was entitled "Attachment G [¶] Arbitration of Dispute Other Than Medical Malpractice [¶] (Optional for Residents and Facility)" (Attachment G, some capitalization omitted).
Attachments F and G both contained the following language:
"By signing this arbitration agreement below, the Resident agrees to be bound by the foregoing arbitration provision. The Resident acknowledges that he or she has the option of not signing this arbitration agreement and not being bound by the arbitration provisions contained herein. The execution of this arbitration agreement is not a precondition to receiving medical treatment or for admission to the Facility. This arbitration agreement may be rescinded by written notice from either party, including the Resident's Legal Representative and/or Agent, if any, and as appropriate, to the other party within thirty (30) days of signature."
Both arbitration agreements bear a date stamp of September 25, 2014, which was seven days after LaBerge was admitted to the nursing facility. There is no other evidence in the record regarding when LaBerge signed these agreements or the circumstances surrounding her signing.
*891 On October 5, 2014, LaBerge began sweating profusely and became very nauseated. The nursing facility staff found her vomiting in the restroom. The record discloses that LaBerge asked the staff for assistance, but the staff left LaBerge alone. At approximately 8:30 p.m., staff found LaBerge on the floor of the bathroom. Her face had turned blue. LaBerge had fallen and had sustained serious injuries to her head and body.
When the paramedics arrived, the nursing facility staff informed them that they had seen LaBerge suffer a heart attack.
LaBerge passed away after she was taken to the hospital. An autopsy revealed that she died as a result of blunt force injuries to her head and torso.
*1157 Plaintiffs, the heirs to LaBerge's estate, brought suit against Defendants, alleging four causes of action, including elder abuse, a violation of Health and Safety Code section 1430, negligence, and wrongful death. Defendants filed a petition to compel arbitration, asserting that LaBerge had agreed, pursuant to Attachments F and G, to arbitrate the claims asserted in the lawsuit brought by Plaintiffs. In setting forth their position, Defendants averred in their motion to compel arbitration that LaBerge was competent at the time she signed the agreements. In anticipation of an argument by Plaintiffs that the agreements at issue did not comply with certain requirements of section 1295, subdivision (c), Defendants also asserted that La Paloma was engaged in interstate commerce, that the arbitration agreements were therefore governed by the FAA, and that the FAA preempts any state law requirements that apply only to certain arbitration agreements, and not to all contracts.[3]
Plaintiffs opposed the petition to compel arbitration, arguing that under the holding in Rodriguez , supra , 176 Cal.App.4th 1461, 98 Cal.Rptr.3d 728, Defendants' motion to compel must be denied.
The trial court relied on Rodriguez to conclude that because LaBerge died before the expiration of the 30-day rescission period under section 1295, subdivision (c), Defendants could not establish that an enforceable arbitration agreement exists. The trial court did not address Defendants' contention that the FAA preempts the requirements imposed by section 1295, subdivision (c).
Defendants filed a timely appeal.
III.
DISCUSSION
A. Standards relating to motions to compel arbitration
The party seeking to compel arbitration has the burden of proving the existence of an enforceable arbitration agreement by a preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance any fact necessary to its defense. ( *1158 Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 951, 972, 64 Cal.Rptr.2d 843, 938 P.2d 903 ( Engalla ); Rosenthal v. Great Western Fin. Securities Corp . (1996) 14 Cal.4th 394, 413, 58 Cal.Rptr.2d 875, 926 P.2d 1061 ( Rosenthal ) ["Because the existence *892 of the agreement is a statutory prerequisite to granting the petition [to compel arbitration], the petitioner bears the burden of proving its existence by a preponderance of the evidence. If the party opposing the petition raises a defense to enforcement-either fraud in the execution voiding the agreement, or a statutory defense of waiver or revocation [citation]-that party bears the burden of producing evidence of, and proving by a preponderance of the evidence, any fact necessary to the defense."].)
In considering a petition to compel arbitration, "the court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion to reach a final determination." ( Engalla , supra , 15 Cal.4th at p. 972, 64 Cal.Rptr.2d 843, 938 P.2d 903.) At a hearing on a petition to compel arbitration, the issue of whether an arbitration agreement exists is a "preliminary question to be determined by the court...." ( Pagett v. Hawaiian Ins. Co. (1975) 45 Cal.App.3d 620, 622, 119 Cal.Rptr. 536 ; see § 1281.2.) If that preliminary question requires the resolution of factual issues, then the court must resolve such issues in the course of the hearing on the petition.
" 'Ordinarily, we review a denial of a petition to compel arbitration for abuse of discretion. [Citation.] However, where the trial court's denial of a petition to arbitrate presents a pure question of law, we review the order de novo.' " ( Mendez v. Mid-Wilshire Health Care Center (2013) 220 Cal.App.4th 534, 541, 163 Cal.Rptr.3d 80.) If the superior court's decision regarding arbitrability is based on resolution of disputed facts, we review the decision for substantial evidence. ( Engineers & Architects Assn. v. Community Development Dept. (1994) 30 Cal.App.4th 644, 653, 35 Cal.Rptr.2d 800.) To the extent the denial of the petition to compel arbitration involves the interpretation of a statute, we review the trial court's interpretation of the relevant statutory language de novo. ( Mesa Shopping Center-East, LLC v. Hill (2014) 232 Cal.App.4th 890, 899, 181 Cal.Rptr.3d 791.)
B. Analysis
1. The statutory framework
Section 1295 addresses arbitration agreements in medical services contracts. The Supreme Court has stated that "[t]he purpose of section 1295 is to encourage and facilitate arbitration of medical malpractice disputes. [Citations.] Accordingly, the provisions of section 1295 are to be construed liberally [to support that legislative purpose]." ( Reigelsperger v. Siller (2007) 40 Cal.4th 574, 578, 53 Cal.Rptr.3d 887, 150 P.3d 764 ( Reigelsperger ).)
*1159 The provisions of section 1295 dictate the form, and to some degree the substance, of such agreements. For example, subdivisions (a) and (b) of section 1295 require the presence of certain language in medical services arbitration agreements, and also specify certain font and color requirements.[4] ( *893 Reigelsperger , supra , 40 Cal.4th at p. 578, 53 Cal.Rptr.3d 887, 150 P.3d 764 ; Titolo v. Cano (2007) 157 Cal.App.4th 310, 319, 68 Cal.Rptr.3d 616.)
The principal dispute in this case involves section 1295, subdivision (c), which provides: "Once signed, such a contract governs all subsequent open-book account transactions for medical services for which the contract was signed until or unless rescinded by written notice within 30 days of signature. Written notice of such rescission may be given by a guardian or conservator of the patient if the patient is incapacitated or a minor."
Section 1295, subdivision (e) provides that a medical services arbitration agreement "is not a contract of adhesion, nor unconscionable nor otherwise improper, where it complies with subdivisions (a), (b) and (c) of this section."
2. Section 1295, subdivision (c) does not create a condition precedent to the enforceability of a medical services arbitration agreement; as a result, a party's death during the 30-day rescission window does not invalidate an otherwise enforceable agreement
Defendants claim that the trial court erred in concluding that they failed to meet their burden of proving the existence of an enforceable arbitration agreement by a preponderance of the evidence. Relying on Rodriguez , supra , 176 Cal.App.4th 1461, 98 Cal.Rptr.3d 728, the trial court concluded that Defendants could not establish the validity of the subject arbitration agreements because LaBerge died prior to the expiration of the 30-day rescission period set forth in section 1295, subdivision (c). Defendants contend that the trial court erred in denying *1160 their motion to compel arbitration based on Rodriguez , in part because, Defendants maintain, the Rodriguez court incorrectly interpreted section 1295, subdivision (c).
In support of their motion to compel arbitration, Defendants offered copies of Attachments F and G. Plaintiffs do not dispute that these arbitration agreements were executed by LaBerge and Defendants. Rather, in the trial court and on appeal, Plaintiffs maintained that because section 1295, subdivision (c) provides that parties may rescind a medical services arbitration agreement within 30 days of signing the agreement, such an agreement is not enforceable until after that 30-day period has elapsed. Plaintiffs rely on Rodriguez to argue that where, as here, one of the parties to an arbitration agreement dies before the end of the 30-day rescission period, "it is impossible to establish an enforceable arbitration agreement exists."
In Rosenthal , supra , 14 Cal.4th at p. 413, 58 Cal.Rptr.2d 875, 926 P.2d 1061, the Supreme Court explained the burden shifting that occurs with respect to a motion to compel arbitration: "[W]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable. Because the existence of the *894 agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence. If the party opposing the petition raises a defense to enforcement ... that party bears the burden of producing evidence of, and proving by a preponderance of the evidence, any fact necessary to the defense."
With respect to the moving party's burden to provide evidence of the existence of an agreement to arbitrate, it is generally sufficient for that party to present a copy of the contract to the court. (See Condee v. Longwood Management Corp. (2001) 88 Cal.App.4th 215, 218, 105 Cal.Rptr.2d 597 ( Condee ); see also Cal. Rules of Court, rule 3.1330 ["A petition to compel arbitration or to stay proceedings pursuant to Code of Civil Procedure sections 1281.2 and 1281.4 must state, in addition to other required allegations, the provisions of the written agreement and the paragraph that provides for arbitration. The provisions must be stated verbatim or a copy must be physically or electronically attached to the petition and incorporated by reference"].) Once such a document is presented to the court, the burden shifts to the party opposing the motion to compel, who may present any challenges to the enforcement of the agreement and evidence in support of those challenges. (See Rosenthal , supra , 14 Cal.4th at p. 413, 58 Cal.Rptr.2d 875, 926 P.2d 1061.)
There is no real dispute that the parties entered into and executed arbitration agreements regarding the services that provide the basis for Plaintiffs'
*1161 lawsuit. Defendants presented to the court Attachments F and G, both executed by LaBerge and La Paloma. Attachment F includes the following relevant language:
"The parties understand that any dispute as to medical malpractice (that is, whether any medical services rendered under this admission agreement were necessary or unauthorized or were improperly, negligently or incompetently rendered), will be determined by submission to neutral arbitration as provided by California law, and not by a lawsuit or court process, except as California law provides for judicial review of arbitration proceedings.
*895 By entering into this arbitration agreement, both parties give up their constitutional right to have any such dispute decided in a court of law before a jury, and instead accept the use of arbitration. [¶] By signing this arbitration agreement below, the Resident agrees to be bound by the foregoing arbitration provision ....
"[¶] ... [¶]
"NOTICE: BY SIGNING THIS AGREEMENT THE RESIDENT AGREES TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION, AND GIVES UP THE RIGHT TO A JURY OR COURT TRIAL." (Italics added.)
Attachment G includes the following relevant language:
"The parties understand that, except as provided below, any claim other than a claim for medical malpractice, arising out of the provision of services by the Facility, the admission agreement, the validity, interpretation, construction, performance and enforcement thereof, or which allege violations of the Elder Abuse and Dependent Adult Civil Protection Act, or the Unfair Competition Act, or which seek an award of punitive damages or attorneys' fees, will be determined by submission to neutral arbitration as provided by California law, and not by a lawsuit or court process, except as California law provides for judicial review of arbitration proceedings. By entering into this arbitration agreement, both parties give up their constitutional right to have any such dispute decided in a court of law before a jury, and instead accept the use of arbitration. [¶] By signing this arbitration agreement below, the Resident agrees to be bound by the foregoing arbitration provision ....
"[¶] ... [¶]
"NOTICE: BY SIGNING THIS AGREEMENT THE RESIDENT AGREES TO HAVE ANY CLAIM MADE ON BEHALF OF THE RESIDENT ARISING OUT OF THE PROVISION OF SERVICES BY THE FACILITY, THE ADMISSION AGREEMENT OR THE VALIDITY, INTERPRETATION, CONSTRUCTION, PERFORMANCE AND ENFORCEMENT THEREOF, OR WHICH ALLEGE VIOLATIONS OF THE ELDER ABUSE
*1162 AND DEPENDENT ADULT CIVIL PROTECTION ACT, OR THE UNFAIR COMPETITION ACT, OR WHICH SEEK AN [A]WARD OF PUNITIVE DAMAGES OR ATTORNEYS' FEES, DECIDED BY NEUTRAL ARBITRATION, AND GIVES UP THE RIGHT TO A JURY OR COURT TRIAL." (Italics added.)
In submitting these arbitration agreements to the trial court, Defendants made a sufficient prima facie showing of the existence of agreements to arbitrate between LaBerge[5] and Defendants. (See Molecular Analytical Systems v. Ciphergen Biosystems, Inc . (2010) 186 Cal.App.4th 696, 701-702, 111 Cal.Rptr.3d 876 [concluding that defendants had "made a sufficient prima facie showing of an agreement to arbitrate, based not only on the allegations of the complaint but also on their moving papers and on their proffer of the [agreement]"]; see also Condee , supra , 88 Cal.App.4th at p. 218, 105 Cal.Rptr.2d 597 [concluding that a petitioner is not required to authenticate an opposing party's signature on an arbitration agreement in the event the authenticity of the signature is not challenged].)
Because Plaintiffs did not dispute that LaBerge signed the agreements, the burden shifted to the Plaintiffs to raise any defenses that they might have to enforcement of the agreements. (See Rosenthal , supra , 14 Cal.4th at p. 413, 58 Cal.Rptr.2d 875, 926 P.2d 1061.) Plaintiffs have not asserted, either in the trial court or on appeal, that LaBerge did not have the capacity to execute the agreements, nor have they raised a contention that the agreements were executed as a result of fraud, duress, or undue influence, such that the agreements may not be enforced.[6]
*896 Rather, *1163 Plaintiffs' main contention is that pursuant to section 1295, subdivision (c), as interpreted by the court in Rodriguez , the arbitration agreements at issue were not immediately enforceable upon their execution. Rather, according to Plaintiffs, the 30-day rescission period granted to parties to medical services arbitration agreements by section 1295, subdivision (c) must fully elapse before a medical services arbitration agreement may be enforced.
In Rodriguez , supra , 176 Cal.App.4th 1461, 98 Cal.Rptr.3d 728, the decedent executed a physician-patient arbitration agreement four days before undergoing gallbladder surgery. ( Id. at pp. 1464-1465, 98 Cal.Rptr.3d 728.) The decedent died shortly after the surgery, allegedly from a nick to her liver that the surgeon caused during the procedure. ( Id. at p. 1465, 98 Cal.Rptr.3d 728.) The decedent's minor child sued the surgeon and others for wrongful death, and the surgeon moved to compel arbitration of the decedent's heir's claim. The superior court granted the petition to compel arbitration. ( Id. at p. 1466, 98 Cal.Rptr.3d 728.) The plaintiff then filed a petition for a writ of mandate. ( Id. at p. 1464, 98 Cal.Rptr.3d 728.)
In concluding that the trial court erred in granting the motion to compel arbitration of the decedent's heir's claim, the Rodriguez court determined that the medical services arbitration agreement was unenforceable because the decedent's death "shortly after the [initial] surgery rendered it impossible to make any evidentiary finding regarding whether [the decedent's] alleged waiver of her rights, not to mention the child's rights, to a jury trial was knowing and voluntary." ( Rodriguez , supra , 176 Cal.App.4th at p. 1469, 98 Cal.Rptr.3d 728.) The court explained:
"[Decedent] was presented with the Arbitration Agreement only four days before her scheduled surgery under circumstances in which she could have believed she must sign the agreement in order to have [defendant surgeon] perform the surgery. There is no evidence that she would or would not have reread and reconsidered the Arbitration Agreement after her surgery or that she would or would not have exercised her right to 'revoke' the agreement within the statutory 30-day revocation period. [Citation.] [Decedent] signed the Arbitration Agreement herself, not through someone authorized to do so on her behalf, and, hence, the determinative factor is [decedent's] intent, not the intent of some representative appointed after her death. [Citation.] [Decedent's] death shortly after the [initial] surgery rendered it impossible to make any evidentiary finding regarding whether [decedent's] alleged waiver of her rights, not to mention the child's rights, to a jury trial was knowing and voluntary. [Decedent's] death prior to the expiration of the 30- *897 day 'cooling off' period also made it impossible for full compliance with section 1295 requirements. A statutory prerequisite to an *1164 enforceable arbitration agreement under section 1295 is that the person signing the agreement must have 30 days to review the agreement and reconsider whether he or she knowingly and voluntarily intends to waive the right to a jury trial or, alternatively, desires to rescind the agreement. ( § 1295, subd. (c).) Thus, [decedent's] death prior to the expiration of the 30-day period rendered it impossible to establish that an arbitration agreement exists that is enforceable under section 1295 . Given the foregoing facts, we conclude that [defendant surgeon] would be unable to carry his burden of proving that an agreement exists." ( Id. at pp. 1469-1470, 98 Cal.Rptr.3d 728, italics added.)
By this reasoning, the Rodriguez court suggests that section 1295, subdivision (c) creates a condition precedent to the enforcement of the terms of a medical services arbitration agreement contract-the condition precedent being the lapsing of the 30-day rescission period without either party rescinding. In our view, this interpretation of section 1295, subdivision (c) fails to adequately take into account the statutory language. Section 1295, subdivision (c) provides in relevant part: "Once signed , such a contract governs all subsequent open-book account transactions for medical services for which the contract was signed until or unless rescinded by written notice within 30 days of signature." ( § 1295, subd. (c), italics added.) The plain meaning of this provision is that a medical services agreement is effective upon execution by the parties and remains in effect until or unless a party rescinds within the 30-day period. Both of the agreements in this case clearly indicate the parties' intent that the agreements were to become valid and enforceable upon their execution, since, in addition to setting forth the language of section 1295, subdivision (c), both agreements state, "By signing this arbitration agreement below, the Resident agrees to be bound by the foregoing arbitration provision," and "BY SIGNING THIS AGREEMENT THE RESIDENT AGREES TO" the arbitration of the identified claims and/or issues. This language indicates a clear intention to obligate the parties, pursuant to the agreements, immediately upon the execution of the documents.[7]
If the Legislature had intended to delay the enforceability of a medical services arbitration agreement for 30 days after the signing of such an agreement, even where the parties indicated an intention to make their obligations under the agreement enforceable upon signing, it could easily have done so by stating that such an agreement does not become enforceable until a 30-day "grace period" elapses after execution of the document. (See Civ. Code, § 1695.6 [in context of home equity sales contracts, providing that "[u]ntil the time within which the equity seller may cancel the transaction has fully elapsed, the equity purchaser shall not" perform under *1165 the contract].) Instead, the Legislature chose to provide parties to a medical services arbitration agreement a statutory right to rescind an otherwise enforceable agreement within 30 days of signing it. Where the terms of such an agreement indicate that the parties have agreed to arbitrate claims immediately upon the signing of the agreement, those terms govern the parties' relationship "until and unless" a party rescinds *898 within the 30-day statutory rescission period.
The medical services arbitration agreements in this case exhibit the parties' intention that the agreements become enforceable immediately upon execution; that one of the parties died during the 30-day rescission period does not negate this express intention. Until the time of LaBerge's death, neither party had rescinded the agreements; the agreements therefore remained in effect and enforceable at the time of her death.
We reach this conclusion with the understanding that our result is in conflict with the interpretation of section 1295, subdivision (c) provided by the court in Rodriguez . However, we do not believe that language of section 1295, subdivision (c) can reasonably be interpreted as creating a statutory condition precedent to the enforceabilty of the parties' obligations under a contract. In reaching a different conclusion, the Rodriguez court appears to have conflated the question whether a contract for which the statute grants a 30-day rescission right is immediately enforceable with the question whether such an agreement was entered into knowingly and voluntarily. (See Rodriguez , supra , 176 Cal.App.4th at p. 1469, 98 Cal.Rptr.3d 728 ["A statutory prerequisite to an enforceable arbitration agreement under section 1295 is that the person signing the agreement must have 30 days to review the agreement and reconsider whether he or she knowingly and voluntarily intends to waive the right to a jury trial or, alternatively, desires to rescind the agreement"].) In other words, the Rodriguez court suggests that in the absence of the lapsing of the 30-day rescission period granted by section 1295, subdivision (c), one cannot conclude that a medical services contract was entered into knowingly and voluntarily. However, section 1295, subdivision (c) does not purport to create a presumption against a finding that a medical services contract was entered into knowingly and voluntarily where a party dies before the full 30 days for rescission has elapsed. Rather, section 1295, subdivision (c) presumes that the parties are capable of entering into a fully enforceable and governing contract upon the signing of the contract, and merely grants them the opportunity to change their minds within 30 days of executing a fully enforceable contract. Indeed, the Rodriguez court's choice of language ultimately reveals the error in its reasoning; the Rodriguez court refers to the 30-day period as providing a party the chance to "reconsider" his or her decision (see Rodriguez , supra , at p. 1469, 98 Cal.Rptr.3d 728 ). The statute's granting of an *1166 opportunity to reconsider a decision does not suggest that a party cannot be determined to have knowingly and voluntarily considered the decision in the first place.
Plaintiffs have not alleged, let alone demonstrated, that LaBerge lacked capacity to assent to the agreements, that she did so only under duress or coercion, or that for some other reason she should not be bound by the provisions of the agreements. (See Ramirez v. Superior Court (1980) 103 Cal.App.3d 746, 756, 163 Cal.Rptr. 223 [despite the presumption that compliance with the terms of section 1295 demonstrates that an agreement is not a contract of adhesion, section 1295 continues to permit a party to seek to show that he or she did not actually consent to arbitration, but was coerced into signing or did not read the many waiver notices provided and failed to realize that the agreement was an agreement to arbitrate].) Under these circumstances, we conclude that LaBerge consented to arbitrate any potential claims consistent with the terms outlined in Attachments F and G, and that her consent remained in effect up until the time of her passing. We respectfully disagree *899 with the Rodriguez opinion to the extent that it suggests otherwise.
3. The arbitration agreements sufficiently comply with the requirements of section 1295
Plaintiffs contend that the arbitration agreements do not comply with section 1295's requirements because with respect to certain language the agreements "have paraphrased several provisions" and "fail[ ] to include important several [sic ] sections of the mandatory language." Specifically, Plaintiffs point out that instead of referring to the document as a "contract" it is referred to as an "agreement," and fails to include the phrase "See Article 1 of this Contract." In addition, Plaintiffs assert that "Defendants also changed some of the mandatory language required [by section 1295 ] in the first paragraph of the agreement," but they do not specify what language was changed.[8] Plaintiffs suggest that the arbitration agreements are unenforceable because of these discrepancies, and that the existence of these discrepancies provides an alternative ground to affirm the trial court's order.
*1167 We conclude that the minor discrepancies that Plaintiffs identify are immaterial for purposes of evaluating the validity of the arbitration agreements, because the agreements substantially comply with all of the material requirements set forth in section 1295. "[T]he doctrine [of substantial compliance] excuses literal noncompliance only when there has been 'actual compliance in respect to the substance essential to every reasonable objective of the statute.' " ( *900 Robertson v. Health Net of California, Inc. (2005) 132 Cal.App.4th 1419, 1430, 34 Cal.Rptr.3d 547.) " ' "Where there is compliance as to all matters of substance [,] technical deviations are not to be given the stature of noncompliance. [Citation.] Substance prevails over form." ' " ( Malek v. Blue Cross of California (2004) 121 Cal.App.4th 44, 72, 16 Cal.Rptr.3d 687 ( Malek ).)
While "there is some doubt whether" statutes regulating arbitration clauses, whose provisions tend to demand certain technical compliance, "permit [ ] mere substantial compliance" ( Zembsch v. Superior Court (2006) 146 Cal.App.4th 153, 166, 53 Cal.Rptr.3d 69 ( Zembsch ) [addressing and rejecting argument that arbitration clause substantially complied with requirements of Health and Safety Code section 1363.1, which requires health care service plans to disclose the requirement of binding arbitration in a manner that is " 'prominently displayed on the enrollment form signed by each subscriber or enrollee' "] ), courts have been unwilling to entirely rule out the doctrine's application with respect to otherwise mandatory provisions regulating arbitration clauses in an appropriate case. ( Zembsch , supra , at p. 166, 53 Cal.Rptr.3d 69 ; Malek , supra , 121 Cal.App.4th at p. 72, 16 Cal.Rptr.3d 687.) Indeed, it could be inequitable to deny effect to an arbitration provision because of an omission of an immaterial word or punctuation mark, or a slight variance in wording, if made inadvertently and without an intention to distract from the objectives of the statutory *1168 requirements. (See Costa v. Superior Court (2006) 37 Cal.4th 986, 1027-1030, 39 Cal.Rptr.3d 470, 128 P.3d 675.)
This case presents an appropriate case for application of the substantial compliance doctrine. Our primary concern is the objective of the statute. The purpose of section 1295 is to " 'encourage[ ] and facilitate [ ] the arbitration of medical malpractice disputes by specifying uniform language to be used in binding arbitration contracts to assure that the patient knows what he is signing and what its ramifications are.' " ( Gross v. Recabaren (1988) 206 Cal.App.3d 771, 776, 253 Cal.Rptr. 820 ; County of Contra Costa v. Kaiser Foundation Health Plan, Inc. (1996) 47 Cal.App.4th 237, 246, 54 Cal.Rptr.2d 628 [same].) There is no reasonable basis for concluding that the arbitration agreements executed by LaBerge do not adequately meet the material requirements of section 1295, and thus fulfill the purpose of ensuring that an individual in LaBerge's position is on notice of what he or she is agreeing to, including the fact that by giving assent, he or she is waiving the right to have a jury decide matters covered by the agreement . We see no material difference between the relevant language in the documents that were presented to LaBerge for her signature, and the language required by section 1295 to ensure adequate protections for individuals seeking to obtain medical services. The discrepancies identified by Plaintiffs are trivial (such as use of the word "agreement" instead of the word "contract" in a required paragraph), and in no way undermine the fact that the agreements adequately emphasize-and reiterate, as required, in red, bold, capitalized print just above the signature lines-that the patient is waiving the right to a jury trial.
IV.
DISPOSITION
The order is reversed. Costs are awarded to Defendants.
I CONCUR:
O'ROURKE, J.

Statutory references are to the Code of Civil Procedure unless otherwise specified.

Because our interpretation of the effect of section 1295, subdivision (c) requires reversal of the order denying Defendants' motion to compel arbitration, we decline to address Defendants' alternative arguments for reversal.

In making this argument, Appellants chose not to provide evidence to support their contention that La Paloma is engaged in interstate commerce, and instead relied on the United States Supreme Court's opinion in Summit Health, Ltd. v. Pinhas (1991) 500 U.S. 322, 111 S.Ct. 1842, 114 L.Ed.2d 366 (Summit Health, Ltd. ) to argue that "commerce" for purposes of FAA coverage, includes a health provider's treatment of Medicare patients, receipt of reimbursement from Medicare, and purchase of out-of-state medicines and supplies. (See Summit Health, Ltd., supra, at pp. 327-329, 111 S.Ct. 1842.)

Section 1295, subdivision (a) provides: "Any contract for medical services which contains a provision for arbitration of any dispute as to professional negligence of a health care provider shall have such provision as the first article of the contract and shall be expressed in the following language: 'It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.' "
Section 1295, subdivision (b) provides: "Immediately before the signature line provided for the individual contracting for the medical services must appear the following in at least 10-point bold red type: [¶] 'NOTICE: BY SIGNING THIS CONTRACT YOU ARE AGREEING TO HAVE ANY ISSUE OF MEDICAL MALPRACTICE DECIDED BY NEUTRAL ARBITRATION AND YOU ARE GIVING UP YOUR RIGHT TO A JURY OR COURT TRIAL. SEE ARTICLE 1 OF THIS CONTRACT.' "

A medical services arbitration agreement entered into in compliance with section 1295 may bind a signatory's heir in seeking a claim based on wrongful death or other cause of action arising from the signatory's medical treatment. (Ruiz v. Podolsky (2010) 50 Cal.4th 838, 854, 114 Cal.Rptr.3d 263, 237 P.3d 584.) Plaintiffs do not challenge that the subject arbitration agreements, if valid, apply to them.

Plaintiffs do assert in briefing on appeal that "[t]here is no evidence the agreements were explained to her, or understood by her." In making this assertion, Plaintiffs appear to suggest that Defendants were required to present evidence with respect to their motion to compel to the effect that LaBerge understood the document. However, it is well established that a party who signs a document is presumed to have read it and to understand its contents. (E.g., Stewart v. Preston Pipeline Inc. (2005) 134 Cal.App.4th 1565, 1588-1589, 36 Cal.Rptr.3d 901 ; Randas v. YMCA of Metropolitan Los Angeles (1993) 17 Cal.App.4th 158, 163, 21 Cal.Rptr.2d 245 ; Estate of Johanson (1943) 62 Cal.App.2d 41, 54, 144 P.2d 72.) It would be Plaintiffs' burden to overcome this presumption; Defendants bore no burden to present affirmative evidence that the agreements were explained to LaBerge or that she understood them, or to otherwise preemptively negate any affirmative defense that Plaintiffs might have to the enforcement of the agreements.
Despite the existence of the presumptions that accompany an executed document, and despite the fact that Plaintiffs have never challenged the circumstances surrounding LaBerge's execution of the relevant documents or her capacity to execute them, the dissent raises the concern that we simply do not know enough about the circumstances surrounding LaBerge's execution of the agreements to give them valid legal effect. The dissent would apparently impose an unprecedented requirement that would seem to apply in any case involving an arbitration agreement-i.e., that, even in the absence of a challenge, the defendant must present evidence of the circumstances of the signing of the arbitration agreement and prove that the plaintiff knowingly and voluntarily waived her right to jury trial, notwithstanding the presence of clear language to that effect in the executed arbitration agreement.

Presumably, however, a contract itself could demonstrate the parties' intent to create a condition precedent to the contract's enforcement.

Again, the first paragraph of Attachment F states:
"The parties understand that any dispute as to medical malpractice (that is, whether any medical services rendered under this admission agreement were necessary or unauthorized or were improperly, negligently or incompetently rendered), will be determined by submission to neutral arbitration as provided by California law, and not by a lawsuit or court process, except as California law provides for judicial review of arbitration proceedings. By entering into this arbitration agreement, both parties give up their constitutional right to have any such dispute decided in a court of law before a jury, and instead accept the use of arbitration."
The first paragraph of Attachment G states:
"The parties understand that, except as provided below, any claim other than a claim for medical malpractice, arising out of the provision of services by the Facility, the admission agreement, the validity, interpretation, construction, performance and enforcement thereof, or which allege violations of the Elder Abuse and Dependent Adult Civil Protection Act, or the Unfair Competition Act, or which seek an award of punitive damages or attorneys' fees, will be determined by submission to neutral arbitration as provided by California law, and not by a lawsuit or court process, except as California law provides for judicial review of arbitration proceedings. By entering into this arbitration agreement, both parties give up their constitutional right to have any such dispute decided in a court of law before a jury, and instead accept the use of arbitration."
For comparison, section 1295, subdivision (a) sets forth the following language that is to be included in medical services arbitration agreements:
" 'It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract were unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration.' "