Filed 5/18/22  Reese v. Enjoy Technology CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CHRISTOPHER REESE, Plaintiff and Respondent, v. ENJOY TECHNOLOGY, INC et al., Defendants and Appellants. | A161662 (Alameda County Super. Ct. No. HG20065994) |

Defendants Enjoy Technology, Inc. (Enjoy), Christopher Harris, and Jasmin Staubli appeal from an order that denied their motion to compel Christopher Reese to arbitrate his claims against them.  We affirm.

## BACKGROUND

### The Parties and the General Setting

Enjoy is a technology company that uses its technology to offer direct delivery and setup of cellular phones and peripherals to customers.  Some of Enjoy's employees, called "experts," deliver the phones to the customer's home, office, or other location and assist the customer with the setup process and related activities.

In November 2018, respondent Christopher Reese went to work at Enjoy as an expert.  Prior to that employment, Reese was presented with an email referring to a series of documents to sign prior to being hired, the

1

details of which are critical to the issue here, and will be described below. Reese's employment at Enjoy ended approximately a year after it began, in November 2019, when Reese resigned, later claiming to have been constructively discharged.

**The Proceedings Below**

On June 26, 2020, Reese filed a complaint naming three defendants: Enjoy, Christopher Harris, and Jasmin Staubli, the individuals alleged to be Reese's supervisors, with Harris his direct supervisor. The complaint alleged various claims based on the Fair Employment and Housing Act (FEHA), including racial discrimination, harassment, retaliation, and failure to prevent; it also alleged common-law claims, violations of the Labor Code, and emotional distress.

The essence of Reese's claims was that he, an African-American male, was disproportionately assigned to deliveries in high crime, low-income areas like Oakland and Vallejo rather than in safer, primarily Caucasian, higher income areas like Walnut Creek and Marin County. Reese alleged when he raised other safety concerns, such as with the storage of items to be delivered in his delivery vehicle, the concerns were disregarded; and when he raised these concerns with human resources, he received no response. Reese resigned, effective November 5, 2019, claiming to be constructively discharged.

On August 4, Enjoy, Harris, and Staubli (collectively defendants) filed a motion to compel arbitration, based on Code of Civil Procedure section 1281.2. The motion argued all Reese's claims were governed by an arbitration provision in what defendants described as an "Employment and Arbitration Agreement" he had signed.

Enjoy's moving papers included the notice of motion, a short memorandum of points and authorities, and the declaration of Clare McKay, Enjoy's senior legal counsel. McKay's declaration was a short, six-paragraphs, comprising all of 29-lines, only seven lines of which had anything to do with Reese's pre-employment communications with Enjoy. These are the seven lines:

"Plaintiff Christopher Reese was hired by Enjoy in November 2018. On November 4, 2018, he was provided with a copy of Enjoy's At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement (hereinafter 'Arbitration Agreement'). He was given time to review the materials and ask any questions he may have regarding it. After reviewing the Employment Agreement, Mr. Reese signed and returned the document. [¶] Attached hereto as Exhibit 1 is a true and correct copy of the Arbitration Agreement signed by Mr. Reese on November 5, 2018."

McKay's declaration provided no details whatsoever as to how Reese was "provided" the "Arbitration Agreement"—indeed, what in fact he was "provided." This, it would develop, would be shown only in Reese's declaration in opposition to defendants' motion, and to a lesser extent from a declaration submitted by defendants in its reply to that opposition.

And what it showed was that late on the evening of November 4— 7:44:46 p.m. to be exact—Fatima Franco, the People Success Coordinator at Enjoy, sent Reese an email that provided in relevant part as follows:

"Hi Christopher!

"Congratulations and welcome to the Enjoy family. We are super excited to have you join us on November 26th!

3

"You will receive an email shortly from BambooHR, our HR portal. You'll see a few things in this email from BambooHR that you'll need to complete. **Please complete these within the next 24 hours.**

"1. **Complete & verify your personal information:**

"This can be found under the 'Personal' tab you can find at the top of the page. Please fill in your personal information, including Social Security Number, Date of Birth, Emergency Contact, mailing address and Driver's license information (located under the 'Personal' tab) and Uniform Size (located under the 'Assets' tab). <u>If you provided this information to your recruiter upon hire, please verify that your information is correct-please see below on where to find that information.</u>

"**\*You must complete this on a desktop to see all fields.**

"2. **Complete the documents found in BambooHR:**

"1. PIIA

"2. Photo Release

"3. AT&T Release Form

"4. I-9 Form (the remaining text boxes to be completed by HR when you start)

"5. Company Vehicle Operating & Usage Policy

"6. Sexual Harassment Policy

"7. Acceptable Use Policy

"8. Background-DMV-Drug Screen (**The background/drug screen will be initiated as soon as you enter your driver's license information in BambooHR. Please see below on where to fill that out in BambooHR**. . . ."

So, what Franco sent to Reese to complete were eight documents, containing untold pages, not one of which, it is clear, made any mention of "arbitration" or an "arbitration agreement."

On September 9, Reese filed his opposition to the motion, which included a memorandum of points and authorities and his declaration. The points and authorities argued that: (1) defendants had not met their burden of proving an agreement to arbitrate; and (2) the agreement was unenforceable because it was unconscionable.

As to Reese's declaration, he testified about "onboarding documents via email that "I was forced to complete." And, Reese went on, "No one at Enjoy explained to me that one of those onboarding documents was an arbitration agreement and no one explained what an arbitration agreement was to me."

Later in his declaration Reese testified that, "[u]pon being given the onboarding documents, I was not told that I could ask any questions I had related to the documents. Additionally, I was never told to consult with an attorney prior to completing any of the onboarding documents. [¶] Around the time that I was offered the position at Enjoy, I attempted to negotiate my pay rate with an individual from human resources, but I was told this was not possible. At the time of being given the onboarding documents, I was never given an opportunity to negotiate the terms in the onboarding documents, and clearly, not any of the terms of the arbitration agreement. I was never told that I could negotiate the terms of my onboarding documents and based on my experience with attempting to negotiate the pay rate, I never believed that negotiating the terms of the onboarding documents was a possibility. I was never even told there was an arbitration agreement contained in the various onboarding documents. I do not recall signing any document that contained an arbitration provision. I was not aware that the

5

arbitration agreement constituted a waiver of a jury trial nor was I told that I could opt out of such an agreement. [¶] . . . [¶] I did not know there was an arbitration provision included in the onboarding documents, nor did I understand that I was waiving my rights to a jury trial. I never consented to waiving my rights to a jury trial because I did not consent to the arbitration agreement."

As noted, the claimed factual support in Enjoy's motion—the entire factual support—was in McKay's declaration, a declaration that, without foundation, testified that Reese was provided with a copy of Enjoy's "At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement." McKay's declaration did not provide how she allegedly knew this information, or whether she personally provided Reese with the agreement. McKay's declaration also testified, again without foundation, that Reese "was given time to review the materials," and to ask any questions he might have had. Finally, in the same conclusory manner, McKay testified that "after reviewing the employment agreement [Reese] signed and returned the document."

In light of the significance of McKay's declaration, Reese's counsel took her deposition, at which she admitted she did not have personal knowledge of whether Reese actually signed the arbitration agreement, or any other document purportedly provided to him in the November 4 email. She also admitted she did not witness Reese sign any documents. Instead, McKay said that she had "personal knowledge" that Reese signed the purported arbitration agreement simply because the arbitration agreement "ha[d] his [electronic] signature on it." And while McKay testified in her declaration that Reese was given the opportunity to read the arbitration agreement and ask questions about it, McKay also admitted she had no personal knowledge

6

of whether Reese was told he could ask questions about the arbitration agreement, assuming it was ever given to him.[1]  In short, McKay's deposition testimony belied the testimony in her declaration, and Reese's opposition included lengthy objections to her "evidence."

Defendants filed a reply, which included a brief declaration of Fatima Franco, the people operations manager within Enjoy's human resources department who had provided the email to Reese.  Franco's declaration attached what she called a "true and correct copy of an email chain between Mr. Reese and myself dated November 5, 2018," which email chain provided in pertinent part that Reese sent an email to Franco stating:  "Hello Fatima, My name is Christopher Reese I completed all the paperwork"; that Franco replied:  "Hi Christopher!  Thank you for completing the forms so quickly"; and that Reese responded by thanking her for her response.

As is apparent, nowhere mentioned in Franco's email is the document on which Enjoy's motion is based—an "At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement," which defendants' brief short-handedly calls the "Employment and Arbitration Agreement."  According to McKay, the "At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement" was the title of the document containing the arbitration agreement Enjoy claimed Reese signed during his hiring process, and which was referred to in Franco's email as "PIIA."  As defendants' brief blissfully puts it, without any explanation or discussion, "Franco states the 'At-Will Employment, Confidential

---

[1] McKay also testified there was no time frame by which Reese needed to return the documents, which was clearly contradicted by the November 4, 2018 email that specifically stated that Reese had 24 hours to complete the documents listed in the email.

Information, Invention Assignment, and Arbitration Agreement [is] referred to as the PIIA.' "

What the acronym PIIA stands for is never explained. And for whatever reason, defendants seem pleased with the content and placement of the arbitration provision, which they describe at one point this way: "The Employment and Arbitration Agreement . . . is a single document, consisting of 12 pages, which includes numbered paragraph headings 1–14, plus six (6) pages of exhibits. [Citation.] In the body of the Employment and Arbitration Agreement, on the eighth page, is paragraph heading 13 entitled 'ARBITRATION AND EQUITABLE RELIEF.' [Citation.] It contains five (5) subparagraphs, A–E, including 'Arbitration,' 'Procedure,' 'Remedy,' 'Administrative Relief' and 'Voluntary Nature of Agreement.' [Citation.] The entire arbitration provision is in all caps and various sections are also bolded." In short, the arbitration provision is on the eighth page of a 12-page document—a document, it bears repeating, described in Franco's email as "PIIA."

The motion came on for hearing on October 28, prior to which the trial court had issued a tentative ruling denying the motion. At the conclusion of the hearing the court took the motion under submission, and the next day entered its final order denying the motion. The order was a comprehensive, four single-spaced pages which, following its introduction, set forth the applicable law. It then described in detail McKay's declaration, at the conclusion of which description the court said, "The Court SUSTAINS [Reese's] objections Nos. 1–3 to this declaration on the grounds that McKay admitted during deposition that she does not have personal knowledge regarding the circumstances surrounding [Reese's] alleged signing of the

8

Arbitration Agreement.[2]  The Court OVERRULES the remaining objections to the McKay declaration."

The court then quoted the arbitration provision on which defendants rely, noting "[t]he arbitration agreement appears to have the electronic signature of 'Christopher Jermaine Reese' dated November 5, 2018."  Then, after briefly detailing Reese's claims, the court went on to frame the question: "Here, there is no dispute over whether [Reese's] claims are within the scope of the Arbitration Agreement, if it were valid.  However, [Reese] argues that the document presented by Enjoy's counsel is not properly authenticated and that the Arbitration Agreement is unconscionable."

The court then noted—and properly so—that defendants bear "the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence," quoting from *Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 842 (*Ruiz*), going on to describe that case at some length.  And the order concluded as follows:

---

[2] In quoting the trial court's order, defendants' brief notes, in a footnote yet, that "[t]he trial court also made some evidentiary rulings, but they are immaterial and do not bear on the determination of the motion or this appeal."  Such comment is truly perplexing, as the three objections sustained by the trial court were to these passages in McKay's declaration:  (1) "On November 4, 2018, [Reese] was provided with a copy of Enjoy's At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement (hereinafter 'Arbitration Agreement')"; (2) he "was given time to review the materials and ask any questions he may have regarding it"; and (3) "after reviewing the Employment Agreement, Mr. Reese signed and returned the document."  The trial court sustained these three objections, explaining at length why, including with its holding that "[i]t is clear that [Reese] is disputing that he signed the [a]rbitration [a]greement, and therefore it was [Enjoy's] burden to provide evidence authenticating [Reese's] purported electronic signature."  These are hardly "immaterial" rulings.

9

"As in *Ruiz*, [Reese] in this case asserts that he was given onboarding documents to complete, but does not recall signing an arbitration agreement. (Declaration of Christopher Reese ['Reese Dec.'] ¶ 6 ['I do not recall signing any document that contained an arbitration provision'].) [Reese] points out that during McKay's deposition, she states that she did not have personal knowledge that [Reese] was told that he could ask any questions regarding the Arbitration Agreement, did not have personal knowledge that [Reese] reviewed the Arbitration Agreement, and she did not witness [Reese] sign the document. (Declaration of Carla Espinoza ['Espinoza Dec.'], Ex. 3 at 17:1–18:18.) Instead, McKay states that she has 'personal knowledge that [Reese] signed the document' because the Arbitration Agreement 'has his signature on it, which was authenticated by BambooHR.' (Id. at 18:6–10.) When asked how BambooHR authenticates a signature, McKay stated that 'it's similar to DocuSign,' in that it 'electronically authenticates the signature after the employee signs,' 'prompts them to confirm their signature,' and 'confirms the IP address[.]' (Id. at 18:19–25.)

"After [Reese] challenged the authenticity of the document and stated that he did not recall signing an arbitration agreement, Defendants were required to provide any evidence to establish the authenticity of the Arbitration Agreement or electronic signature as stated in *Ruiz*. Instead, Defendants simply argue that they did not have to authenticate the Arbitration Agreement as a preliminary matter, and that [Reese] purportedly did not dispute the fact that he signed the Arbitration Agreement. It is clear that [Reese] is disputing that he signed the Arbitration Agreement, and therefore it was Defendants' burden to provide evidence authenticating his purported electronic signature. As Defendants failed to do so, they failed to establish the existence of an arbitration agreement. On this ground, the

10

Court DENIES WITHOUT PREJUDICE Defendants' Motion to Compel Arbitration.

"The Court does not reach the remaining issues regarding the enforceability and validity of the Arbitration Agreement."

On November 13, defendants filed their notice of appeal.

## DISCUSSION

### Introduction

Defendants have filed an opening brief that contains a total of 14 pages of "argument," consisting of these three bold-faced statements: "A.  Defendants need not authenticate the signed Employment and Arbitration Agreement for it to be enforceable"; "B.  Plaintiff's failure to read the Employment and Arbitration Agreement or recall its arbitration provision does not shift the burden to Defendants to prove its authenticity"; and "C.  The trial court misapplied the facts and erred in relying on *Ruiz*[, *supra*, 232 Cal.App.4th 836], which is distinguishable on its face, in denying Defendants' motion."

While "A" and "B" may be correct statements as far as they go in the abstract, they fail to come to grips with the situation here.  And "C" is simply wrong.  The trial court got it right.

### The Law and the Standard of Review

A party moving to compel arbitration has the burden to prove the existence of a valid agreement to arbitrate.  (See Code Civ. Proc, § 1281.2 [court will order arbitration "if it determines that an agreement to arbitrate . . . exists"].)  In the words of the Supreme Court, "The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary

11

to its defense.  [Citation.]  [T]he trial court sits as the trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as any oral testimony received at the court's discretion, to reach a final determination." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972; accord, *Ruiz, supra,* 232 Cal.App.4th at p. 842.)

And we review the matter in light of the applicable standard of review, which we have described this way:  "There is no uniform standard of review for evaluating an order denying a motion to compel arbitration.  [Citation.]  If the court's order is based on a decision of fact, then we adopt a substantial evidence standard.  [Citations.]  Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed.  [Citations.]" (*Robertson v. Health Net of California, Inc.* (2005) 132 Cal.App.4th 1419, 1425; accord, *Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 630.)

Here, the trial court considered and analyzed all the facts and circumstances to arrive at its holding—an analysis, not incidentally, counsel for defendants point-blank acknowledged at oral argument was what was involved.  As counsel there put it, the court "will look at context and surrounding circumstances to all available evidence and inferences that can be drawn from that."  That is the setting here, a determination of fact—and it is supported by the record.

As noted, the trial court relied heavily on *Ruiz.*  So does Reese.  And so will we, as the facts are almost indistinguishable from the setting here. There, like here, an employer sought to compel arbitration based on a declaration by a person without first-hand knowledge—there, business manager Main—that the employee electronically signed an agreement to arbitrate, a declaration that did not explain how Main arrived at her

12

conclusion.  As the Court of Appeal described it, Ruiz's opposition argued that "Main's 'conclusory statement' that he electronically signed the 2011 agreement was 'not enough to prove by a preponderance of the evidence' that he did, in fact, electronically sign the agreement.  In his opposing declaration, Ruiz averred he did not recall signing any arbitration agreement on September 21, 2011, or at any other time, and if he had been presented with an agreement that limited his ability to sue Moss Bros. he would not have signed it.  [¶]  Ruiz further indicated, however, that he *may have signed* an arbitration agreement when he was hired as a service technician for Moss Bros. in March 2010, but he was uncertain.  On March 12, his first day of work, he met with his supervisor, Mike Dawe, to process his 'new-hire paperwork,' and during this meeting he was given a 'big stack of forms' and was told he had to sign them.  He was given a brief description of each form but not an opportunity to 'read each and every form.'  He then met with Kimberly Pacheco who had him 'electronically sign a few [additional] forms,' but he did not recall signing any arbitration agreement when he was hired in 2010, and he did not receive copies of any of the forms he was required to sign." (*Ruiz, supra*, 232 Cal.App.4th at p. 840, fn. omitted.)

The employer filed reply papers indicating that all employees were required to sign, and explained how the employee was to log on, to review and sign forms.  But the court added, "still, Main did not indicate *whether or if so, how*" the employer "ascertained that Ruiz electronically signed, or was the person who electronically signed . . . ." (*Ruiz, supra*, 232 Cal.App.4th at p. 841.)  This, the court would later say, "left a critical gap in the evidence supporting the petition." (*Id*. at p. 844.)

And so the court went on to hold:  "In the face of Ruiz's failure to recall electronically signing the 2011 agreement, the fact the 2011 agreement had

13

an electronic signature on it in the name of Ruiz, and a date and time stamp for the signature, was insufficient to support a finding that the electronic signature was, in fact, 'the act of' Ruiz. (Civ. Code, § 1633.9, subd. (a).) For the same reason, the evidence was insufficient to support a finding that the electronic signature was what Moss Bros. claimed it was: the electronic signature of Ruiz. (Evid. Code, § 1400, item (a).) This was not a difficult evidentiary burden to meet, but it was not met here." (*Ruiz, supra,* 232 Cal.app.4th at p. 844.)[3]

*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062 (*Fabian*), is also instructive. There, defendant put forth an agreement to arbitrate by attaching to its petition a copy of the arbitration agreement that purportedly bore plaintiff's electronic signature. (*Id.* at p. 1067.) However, because plaintiff declared she did not sign the arbitration agreement, the defendant then had the burden of proving by a preponderance of the evidence that the electronic signature was authentic, and defendant failed to prove plaintiff electronically signed contract because defendant did not explain "DocuSign" process. (*Id.* at pp. 1068–1069.)

In sum, the trial court analyzed the evidence before it, and held that Enjoy had not met its burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. In light of this, defendants

---

[3] Defendants seek to distinguish *Ruiz* on three bases, one of which, however quizzically, asserts that the Employment and Arbitration Agreement here is "not a stand-alone arbitration agreement like in *Ruiz*, but is instead a 12-page (plus attachments) At-Will Employment, Confidential Information, Invention Assignment and Arbitration Agreement, where the arbitration provision is located on the eighth page under the heading '**13. Arbitration and Equitable Relief.**'" If that is a good point of distinction, it comes in a novel guise.

have a heavy, perhaps insurmountable, burden on appeal, as set forth, for example in *Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466 (*Sonic*): " 'Thus, where the issue on appeal turns on a failure of proof at trial, the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law. [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight to leave no room for a judicial determination that it was insufficient to support a finding." ' (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1527–1528 [overruled in part on other grounds as stated in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010 & fn. 7]." (Accord, *Los Angeles County Dept. of Children & Family Services v. Superior Court* (2013) 215 Cal.App.4th 962, 967.)

*Fabian* recently described the burden imposed by *Sonic* this way: " ' "[w]here, as here, the judgment is against the party who has the burden of proof, it is almost impossible for him to prevail on appeal by arguing the evidence compels a judgment in his favor. That is because unless the trial court makes specific findings of fact in favor of the losing [party], we presume the trial court found the [party's] evidence lacks sufficient weight and credibility to carry the burden of proof. [Citations.] We have no power on appeal to judge the credibility of witnesses or to reweigh the evidence." ' [Citation.] 'The appellate court cannot substitute its factual determinations for those of the trial court; it must view all factual matters most favorably to the prevailing party and in support of the judgment. [Citation.] ' "All conflicts, therefore, must be resolved in favor of the respondent.' [Citation.]" [Citation.]' [Citation.]" (*Fabian, supra*, 42 Cal.App.5th at p. 1067.)

15

Defendants do not even attempt to meet this burden. And their brief arguments against the trial court's ruling are unavailing.

Defendants' primary bold-faced argument, to which it devotes almost half of its argument, is that defendants need not authenticate the signed Arbitration Agreement for it to be enforceable, in claimed support of which it relies primarily on *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215 (*Condee*) and *Baker v. Italian Maple Holdings, LLC* (2017) 13 Cal.App.5th 1152 (*Baker*). Neither is apt.

*Condee* held only that an agreement to arbitrate can be easily shown, assuming there is no contrary showing by the employee, which, of course, is not the situation here. So as *Ruiz* put it, defendants' "reliance on *Condee* is misplaced," as the opposing party "*did not challenge* the authenticity of its signature on the agreement." (*Ruiz, supra*, 232 Cal.App.4th at p. 845.) As *Ruiz* distilled it, "Properly understood, *Condee* holds that a petitioner is not required to authenticate an opposing party's signature on an arbitration agreement *as a preliminary matter* in moving for arbitration *or* in the event the authenticity of the signature is not challenged. (*Id.* at p. 846; see also *Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1219, fn. 8.)[4]

*Baker*, *supra*, 13 Cal.App.5th 1152 is similarly unhelpful, as there was no dispute that Ms. La Berge signed the agreement. (*Id.* at p. 1162.)

Defendants' bold-faced "B"—Reese's failure to read the employment and arbitration agreement or recall its arbitration provision does not shift the burden to defendants to prove its authenticity—has no application here, as Reese's position is based on much more than he "does not recall" signing any arbitration agreement. Thus, the three cases defendants cite—*Brookwood v.*

---

[4] Reese's citation to other cases distinguishing *Condee* is inappropriate, as the other cases are unpublished.

*Bank of America* (1996) 45 Cal.App.4th 1667, *Pinnacle Museum Tower Assn. v. Pinnacle Market Development* (2012) 55 Cal.4th 223, and *Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699—are distinguishable.

And, as noted, defendants' bold-faced "C"—the trial court "misapplied the facts and erred in relying on *Ruiz . . . .*" is simply wrong.  The trial court got it right.

## DISPOSITION

The order denying the motion to compel arbitration is affirmed.  Reese shall recover his costs on appeal.

_____
Richman, Acting P. J.

We concur:


_____
Miller, J.


_____
Mayfield, J. *


*Reese v. Enjoy Technology, Inc.* (A161662)

    \*Superior Court of Mendocino County, Judge Cindee Mayfield, sitting as assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.