**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOYCE WALKER; KIM BRUCE HOWLETT; MURIEL SPOONER; TALINE BEDELIAN; OSCAR GUEVARA, on behalf of themselves and all others similarly situated, *Plaintiffs-Appellees/ Cross-Appellants*, | Nos. 19-55241 19-55242 D.C. No. 2:10-cv-09198-JVS-JDE |
| v. | OPINION |
| LIFE INSURANCE COMPANY OF THE SOUTHWEST, a Texas corporation, *Defendant-Appellant/ Cross-Appellee.* | |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted February 10, 2020
Pasadena, California

Filed March 23, 2020

Before: Marsha S. Berzon, Richard C. Tallman,
and Ryan D. Nelson, Circuit Judges.

Opinion by Judge Tallman

# SUMMARY[*]

## Class Certification

The panel affirmed the district court's class certification order, and dismissed plaintiffs' untimely and procedurally improper attempts to cross-appeal, in a diversity action alleging a life insurance company violated California law concerning policy investment information.

In the course of purchasing a policy, a prospective policyholder receives at least one type of illustration, which is an informational document projecting a policy's returns: (1) a "pre-application" illustration, which the applicant may, but is not required to, receive before or at the same time as obtaining the policy application; and/or (2) a "batch" illustration, which is delivered to the applicant along with a copy of the policy, after the applicant submits her application and the insurer approves it.

The named plaintiffs received pre-application and batch illustrations, and allegedly relied on the illustrations in deciding to purchase policies. Plaintiffs alleged that the insurer's illustrations of potential earnings violated California's Unfair Competition Law ("UCL").

Fed. R. Civ. P. 23(b)(3) requires that "questions of law and fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other methods." The district court

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

certified a narrow class of California residents who were pre-application illustration recipients, and which effectively excluded those policyholders who received only batch illustrations when their policies were delivered.

Considering the insurer's challenge to the class certification order, the panel held that any misunderstanding on the district court's behalf in interpreting *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017), did not meaningfully influence its predominance analysis. The panel concluded that there was no separate error related to the class definition. To bring a UCL claim, a plaintiff must establish he suffered as a result of the defendant's conduct. The panel held that the district court considered the key issue – whether each plaintiff was exposed to, and thereby could have relied on, the deficient illustrations. The panel further concluded that in UCL cases: exposure is relevant to predominance, but only to establish reliance; and a district court does not err *per se* by not considering the class membership question under the predominance prong of UCL analysis. The panel rejected the insurer's two specific concerns to the class certification order: the district court's reliance on *Briseno*; and the class definition. The panel held as an issue of first impression in this circuit that a district court can, as it did here, define a class in a way that automatically gives rise to a presumption of reliance.

The panel held that plaintiffs' attempted appeals of the district court's class certification and reconsideration orders were untimely and procedurally improper, respectively. The panel did not reach the merits of plaintiffs' arguments. The panel further denied plaintiffs' motion to take judicial notice of their petition to appeal, and the insurer's answer thereto.

**COUNSEL**

Noah A. Levine (argued), Wilmer Cutler Pickering Hale & Dorr LLP, New York, New York; Andrea J. Robinson and Timothy J. Perla, Wilmer Cutler Pickering Hale & Dorr LLP, Boston, Massachusetts; Matthew T. Martens, Wilmer Cutler Pickering Hale & Dorr LLP, Washington, D.C.; Jonathan A. Shapiro, Baker Botts LLP, San Francisco, California; for Defendant-Appellant.

Brian P. Brosnahan (argued), Cornerstone Law Group, San Francisco, California; Lyn R. Agre, Margaret A. Ziemianek, and Veronica Nauts, Kasowitz Benson Torres LLP, San Francisco, California; for Plaintiffs-Appellees.

Xavier Becerra, Attorney General; Diane S. Shaw, Senior Assistant Attorney General; Lisa W. Chao, Supervising Deputy Attorney; Office of the Attorney General, Los Angeles, California; for Amicus Curiae Ricardo Lara, Insurance Commissioner of the State of California.

**OPINION**

TALLMAN, Circuit Judge:

Life Insurance Company of the Southwest ("LSW") appeals in case number 19-55241 a class-certification order, arguing the district court committed legal error by granting certification in a case featuring predominantly individualized questions. Joyce Walker and four other named plaintiffs in case number 19-55242 challenge, on behalf of the certified class ("Plaintiffs"), the same certification order. Plaintiffs seek to enlarge the class. LSW

counters that Plaintiffs' appeal is either too late or procedurally improper.

In disposing of the issues before us, we are guided by well-established canons of class-certification law, which collectively—and as specifically applied here—remind us that the class-action mechanism is remedial, but not absolute.  On one hand, the district court's order certifying a class properly enables the mechanism to serve its intended purpose:  providing individual plaintiffs with a vehicle through which they can efficiently protect their rights and overcome potentially prohibitive economic barriers to seek legal relief.  On the other hand, those equitable justifications for the class-action mechanism do not save Plaintiffs' case from the straightforward, even if unforgiving, timing and procedural requirements that serve practical case-management purposes.

We invoke these principles in affirming the district court's certification order and declining to consider Plaintiffs' cross-appeal.

I

LSW sells life insurance policies, which also double as investment vehicles, two of which are challenged here.  In the course of purchasing a policy, a prospective policyholder receives at least one type of "illustration," which is an informational document projecting a policy's returns, over the life of the policy, on premiums in addition to the payment of a lump-sum benefit at death.  The first kind of illustration is a "pre-application" illustration, which the applicant may, but is not required to, receive before or at the same time as obtaining the policy application.  A "batch" illustration, in contrast, typically is delivered to the applicant along with a copy of the policy, after the applicant submits her application

and LSW approves it. LSW does not always provide an applicant with a batch illustration. But it must do so under California law if either a pre-application illustration was never given to the applicant, or the policy as issued reflected different underwriting criteria from the pre-application illustration. All five named Plaintiffs received pre-application and batch illustrations.

Plaintiffs argue that LSW's illustrations of potential earnings violate California's Unfair Competition Law ("UCL") because they do not define or detail the meaning of policy column headings reading "Guaranteed Values at 2.00%" and "Guaranteed Values at 2.50%." Plaintiffs also allege the illustrations promised to eliminate a certain administrative fee after ten years, and that the illustrations fail to describe this "nonguaranteed" element in violation of California law. Plaintiffs allegedly relied on the illustrations in deciding to purchase policies.

Plaintiffs' UCL case has taken a circuitous path. The district court originally dismissed the very claims underlying this appeal, finding that the part of the UCL under which Plaintiffs sued did not create a private right of action. Around the same time, in November 2012, the district court certified two classes advancing related but distinct claims. One class consisted of policyholders advancing common-law fraud claims against LSW. The other was made up of policyholders who received pre-application illustrations and brought claims under a different part of the UCL. The district court subsequently decertified the latter class, concluding that the task of determining on a plaintiff-by-plaintiff basis who received pre-application illustrations would predominate over questions common to the class, rendering class treatment inappropriate.

After a jury returned a defense verdict on the fraud and UCL claims, a panel of this Court reversed the district court's dismissal order.  Plaintiffs then sought to litigate the reinstated UCL claims through yet another class action.  They proposed two alternative class definitions, both describing California residents who purchased certain LSW policies during a specified period.  The narrower of the two classes was limited to recipients of pre-application illustrations:

> All persons who purchased a Provider Policy or Paragon Policy from Life Insurance Company of the Southwest that was issued between September 24, 2006[,] and April 27, 2014, who resided in California at the time the Policy was issued, and who received an illustration on or before the date of policy application.

By extending membership only to pre-application illustration recipients, the proposed class—like the class the district court decertified—effectively excluded those policyholders who received only batch illustrations when their policies were delivered.

The district court certified the narrow class over the same objection LSW advanced in 2012 and 2013 regarding the later-decertified class:  that Plaintiffs' claims were incapable of class-wide proof because the court would have to individually establish each Plaintiff's receipt of a pre-application illustration.  LSW argued that certification would be improper under Rule 23(b)(3) of the Federal Rules of Civil Procedure because individualized questions predominated over class-wide ones.  The court rejected LSW's concern and responded to it, in part by citing our

decision in *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1133 (9th Cir. 2017), which clarified that "Rule 23 neither provides nor implies that demonstrating an administratively feasible way to identify class members is a prerequisite to class certification." Based on *Briseno*, the district court held that "the concerns motivating [its] prior Decertification Order [of the pre-application illustration recipient class] are no longer valid justifications to find a lack of predominance."

Under the "Predominance" sub-heading of the certification order, the court determined Plaintiffs were entitled to a legal presumption that all class members relied on the illustrations before purchase. It reasoned, "[E]very member of the class was exposed to an illustration containing [UCL] violations prior to his or her purchase of an LSW policy" because the class definition excluded policyholders who did not obtain pre-application illustrations. The court rejected LSW's argument that other information provided to applicants could have corrected any misimpression the illustrations caused.

LSW petitioned for permission to appeal the July 31, 2018, certification order on August 14. On the same day, Plaintiffs moved the district court to reconsider its certification order and adopt the broader of the two class definitions originally proposed, which did not limit class membership to pre-application illustration recipients and therefore included batch illustration recipients. The district court denied Plaintiffs' motion on September 10, without prejudice, for failure to satisfy a local meet-and-confer rule. Plaintiffs re-noticed their motion for reconsideration on September 18, and the district court denied it on October 22, 2018. Plaintiffs petitioned our Court for permission to appeal the October 22 order fourteen days later. We granted

LSW's petition to appeal and Plaintiffs' petition to appeal on a conditional basis.

## II

The district court had jurisdiction under 28 U.S.C. § 1332(d)(2)(A). We have jurisdiction pursuant to 28 U.S.C. § 1292(e).

Two standards guide our review of class-certification decisions. The abuse-of-discretion standard applies to "any particular underlying Rule 23 determination involving a discretionary determination," *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1091 (9th Cir. 2010), including whether the district court "relies upon an improper factor, omits consideration of a factor entitled to substantial weight, or mulls the correct mix of factors but makes a clear error of judgment in assaying them," *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1171 (9th Cir. 2010) (quoting *Parra v. Bashas', Inc.*, 536 F.3d 975, 977–78 (9th Cir. 2008)). The Court "accord[s] the district court noticeably more deference" to a grant of certification "than when [it] review[s] a denial." *Wolin*, 617 F.3d at 1171 (quoting *In re Salomon Analyst Metromedia Litig.*, 544 F.3d 474, 480 (2d Cir. 2008)). But we grant no deference to the district court's legal conclusions, which we review de novo. *See Yokoyama*, 594 F.3d at 1091. "Further, this [C]ourt has oft repeated that an error of law *is* an abuse of discretion." *Id.* "[W]e may," however, "sustain the court's ruling [on class certification] on any ground supported by the record." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

## III

LSW asks us to reverse the district court's certification order. It alleges the district court committed legal error by

(1) misapplying *Briseno* and (2) manipulating the class definition to certify the narrower of Plaintiffs' two proposed classes even though individualized issues predominate over common ones in contravention of Rule 23(b)(3). While we do not agree with the district court's apparent interpretation of *Briseno*, we find that any misunderstanding on the court's part did not meaningfully influence its predominance analysis. We conclude there is no separate error related to the class definition.

A

A plaintiff pursuing class certification must satisfy each prerequisite of Rule 23(a) and establish an appropriate ground for maintaining the class action under Rule 23(b). *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011), *abrogated on other grounds by Comcast Corp. v. Behrend*, 569 U.S. 27 (2013). Rule 23(b)(3) in turn requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

To assess Rule 23(b)(3) predominance, we ask "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Stearns*, 655 F.3d at 1019 (quoting *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 957 (9th Cir. 2009)). We focus on whether "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication"; if so, "there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting 7A Charles Alan Wright et al., Federal Practice & Procedure § 1778 (2d ed. 1986)),

*overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011).

A district court's assessment of predominance "begins, of course, with the elements of the underlying cause of action." *Stearns*, 655 F.3d at 1020 (quoting *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011)). The focus of the inquiry accordingly varies depending on the nature of the underlying claims. In UCL cases, district courts must consider whether class members were exposed to the defendant's alleged misrepresentations, but for a single, critical purpose: establishing reliance.

The UCL bans "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. To bring a UCL claim, a plaintiff must establish he suffered "as a result of" the defendant's conduct. *Id.* § 17204. In the seminal California case on UCL class actions, *In re Tobacco II Cases*, the defendants moved to decertify a UCL class for the reason that individualized issues—*i.e.*, whether all class members were exposed to, relied on, and were injured by allegedly false and deceptive advertisements— predominated over common ones. 207 P.3d 20, 28 (Cal. 2009). The California Supreme Court interpreted this statute to mean that named plaintiffs, but not absent ones, must show proof of "actual reliance" at the certification stage. *Id.* at 38. Relying on California cases, wherein courts "repeatedly and consistently . . . h[eld] that relief under the UCL is available without individualized proof of deception, reliance and injury," the court reasoned that "requiring all unnamed members of a class action to individually establish standing would effectively eliminate the class action lawsuit as a vehicle for the vindication" of rights under the UCL. *Id.* at 35–36.

We have repeatedly relied on *Tobacco II* in recognizing "what amounts to a conclusive presumption" of reliance in UCL cases. *Stearns*, 655 F.3d at 1021 n.13. The presumption serves to relieve UCL plaintiffs of their obligation to establish absent class members' reliance, *see* 2 Newberg on Class Actions § 4:60 (5th ed. 2019)—an issue that, in other contexts, can raise so many individualized questions as to defeat predominance, *id.* § 4:58.

We have been careful to clarify, however, that the presumption will not arise in every UCL case. "For example, it might well be that there was no cohesion among the members because they were exposed to quite disparate information from various representatives of the defendant." *Stearns*, 655 F.3d at 1020. To establish a reliance presumption, the operative question has become whether the defendant so pervasively disseminated material misrepresentations that all plaintiffs must have been exposed to them. *See id.* at 1020–21 (rejecting district court's conclusion that individual reliance issues predominated for purposes of UCL claim, where plaintiffs alleged website automatically enrolled customers in a program that charged a monthly fee); *Berger v. Home Depot USA, Inc.*, 741 F.3d 1061, 1069 (9th Cir. 2014) (affirming district court's conclusion that Rule 23(b) was not satisfied where Plaintiff "ha[d] not alleged that all of the members of his proposed class were exposed to Home Depot's alleged deceptive practices"), *abrogated on other grounds by Microsoft Corp. v. Baker*, 137 S. Ct. 1702 (2017); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 595–96 (9th Cir. 2012) (vacating district court's certification order where Honda's advertising program "f[e]ll short of the 'extensive and long-term [fraudulent] advertising campaign' at issue in *Tobacco II*" (quoting *Tobacco II*, 207 P.3d at 41)).

B

Against this backdrop, there was no legal error in the form of the district court's analysis. Contrary to LSW's characterization of the certification order, the district court considered the key issue—whether each Plaintiff was exposed to, and thereby could have relied on, the deficient illustrations.

Under the certification order's sub-heading "Predominance," the court expressly acknowledged LSW's arguments "that predominance is lacking because Plaintiffs' claims raise individualized questions about the varied purchase processes," and "that Plaintiffs must show that all policyholders saw the illustrations, had the alleged misunderstandings, and did not receive other information to eliminate the potential misunderstandings." The district court undertook a detailed recounting of relevant Ninth Circuit class-certification cases; adopted a class definition that limits membership to only those policyholders who received pre-application illustrations, thereby ensuring all Plaintiffs would have been exposed to the illustrations; and ultimately rejected LSW's argument that it mattered whether other information provided to applicants could have corrected any misimpression the illustrations caused. The court found that LSW's evidence did not "detract[] sufficiently from the predominance of the other common issues to warrant a refusal to certify the class."

LSW is technically correct that the district court did not consider, under the predominance rubric, the logistical difficulties of determining whether each Plaintiff was exposed to an illustration. But that was not the court's burden.

Our case law makes clear that Rule 23(b)(3)'s predominance inquiry does concern itself with exposure, but for the limited purpose of satisfying the UCL's standing requirement of reliance. *See supra* § III(A); *accord Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 509–13 (6th Cir. 2015) (for UCL claim, concluding predominance inquiry after determining case facts supported reliance presumption). Our cases do not additionally task district courts with analyzing, for predominance purposes, the logistical difficulties attendant to identifying plaintiffs who were exposed to misrepresentations and therefore may be entitled to class membership. To the contrary, we have suggested—without mentioning predominance—that the superiority prong might best lend itself to considering that issue. *See Briseno*, 844 F.3d at 1126 (declining to impose a separate administrability requirement to assess the difficulty of identifying class members, in part, because the superiority criterion already mandates considering "the likely difficulties in managing a class action").

But even *Briseno* does not speak in certain terms. Nor do the cases LSW relies on. Some of those cases instead demonstrate that courts overall "have been inconsistent in how they have accounted for difficulties in identifying class members." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 471 (6th Cir. 2017). For instance, while the Second Circuit has employed the predominance requirement to analyze issues arguably bearing on class membership, *see In re Petrobras Sec.*, 862 F.3d 250, 270–74 (2d Cir. 2017), the Sixth Circuit in a UCL case considered the issue solely under a standalone ascertainability requirement, *Rikos*, 799 F.3d at 524–27. The Eighth Circuit, in contrast, took a middle ground in *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, assessing under the predominance criterion the binary question of

whether common legal and factual questions predominated, but saving for its separate ascertainability analysis the more specific issue of member-identification difficulties.  *See* 821 F.3d 992, 996–98 (8th Cir. 2016).

In light of the significant degree of variation in federal courts' approaches to member identification, we find wisdom in the Sixth Circuit's conclusion that a district court's class-certification analysis would have been "equally sufficient," "regardless of whether th[e] [member-identification] concern [was] properly articulated as part of ascertainability, Rule 23(b)(3) predominance, or Rule 23(b)(3) superiority." *ASD Specialty Healthcare*, 863 F.3d at 466.  We accordingly decline today to impugn the district court's class-certification analysis by mandating a one-size-fits-all approach to class-member identification.   We conclude only that, in UCL cases, (1) exposure is relevant to predominance, but only to establish reliance, and (2) a district court does not err *per se* by not considering the class-membership question under the predominance prong.

## C

LSW articulates two specific concerns, neither of which changes our decision to affirm.

### 1

First, LSW argues that (1) *Briseno* had no impact on Rule 23(b)(3)'s predominance requirement, and (2) the district court improperly relied on *Briseno* in declining to consider certain issues as part of its predominance analysis. We agree with LSW's reading of *Briseno* but conclude that the district court's apparent misunderstanding of the case wrought no legal error.

In *Briseno* we considered a narrow issue: whether consumers, bringing fraud claims against ConAgra for allegedly misleading cooking-oil labels, needed to demonstrate that there is an "administratively feasible" means of identifying absent class members before reaching Rule 23(a) and (b)'s class-certification requirements. *See* 844 F.3d at 1123. ConAgra argued that absent consumers would not be able to reliably identify themselves as class members and opposed certification on that basis. *Id.* at 1124. We rejected ConAgra's argument. We concluded that a freestanding administrability requirement would conflict with the plain language of Rule 23, because the rule sets forth exhaustive factors a district court must consider in deciding whether to certify a class—none of them a freestanding administrability requirement. *Id.* at 1125–26. We further determined, in support of our holding, that Rule 23 already calls upon the district court to consider the likely difficulties of managing a class action as part of its comparative superiority analysis, thereby rendering a separate administrability requirement superfluous. *Id.* at 1128.

*Briseno* also took stock of the practical, negative consequences of a standalone administrability requirement. We reasoned that such a requirement "would invite courts to consider the administrative burdens of class litigation 'in a vacuum,'" whereas the Rule 23(b)(3) superiority analysis appropriately "calls for a comparative assessment of the costs and benefits of class adjudication, including the availability of 'other methods' for resolving the controversy." *Id.* (quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015)). Our primary concern was that a standalone requirement would improperly bar certification in cases like *Briseno*, where administrability is difficult to demonstrate but for which the class action

remains the only realistic way to litigate the case.  *See id.*  To avoid this result, we joined the Sixth, Seventh, and Eighth Circuits in declining to adopt a separate administrability requirement.  *Id.* at 1133.  That is the central holding of *Briseno*.

We agree with LSW that *Briseno* was narrow in focus. The case does not expressly excuse a district court from considering exposure under the predominance rubric. *Briseno*, in fact, did not directly bear on predominance at all.

We also share LSW's concern that the district court may have misapplied *Briseno* to preclude consideration of certain issues under predominance.  The court in 2013 decertified a class, which appears to have been identical in composition to the class at issue here, based on predominance problems. It reversed course in 2018, ostensibly based on *Briseno*.  In the relevant part of its certification order, the district court rejected LSW's argument—that predominance is lacking because determining pre-application receipt requires individualized inquiries—by relying on that case.

The district court's reliance on *Briseno* is concerning but, ultimately, inconsequential.  The reliance in the end did not prevent the court from undertaking a legally correct class-certification analysis.  The court properly considered the key exposure issue—whether the allegations supported a reliance presumption—under predominance, holding they did.  In the context of superiority, the court further analyzed the logistical difficulties inherent in identifying class members by establishing plaintiff-by-plaintiff exposure to LSW's illustrations.  This analysis conforms with *Briseno* and class-certification law more broadly.  The court's reliance on *Briseno* caused no legal error.

2

Second, LSW objects to the class definition. It argues the district court avoided analyzing the key predominance question—whether class members were exposed to the illustrations—in part by limiting class membership to pre-application illustration recipients and thereby improperly embedding the exposure issue into the class definition. The argument is unpersuasive. LSW cites no directly supportive authority, and the contention directly conflicts with Ninth Circuit precedent obligating district courts to tailor class definitions in a way that avoids predominance issues. *See, e.g.*, *Mazza*, 666 F.3d at 596 ("In the absence of the kind of massive advertising campaign at issue in *Tobacco II*, the relevant class must be defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading."); *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1139 (9th Cir. 2016) (holding that class definition was not overly broad so as to defeat predominance and acknowledging that "the district court may . . . adjust the scope of the class definition, if it later finds that the inclusiveness of the class exceeds the limits of [the defendant's] legal liability").

The more apt and complicated question, we think, is whether a district court can, as it did here, define a class in a way that automatically gives rise to a presumption of reliance. This question appears to be one of first impression in our circuit. In our prior UCL class-certification cases, we have relied on allegations and evidence establishing class-wide dissemination of alleged misrepresentations to determine whether a presumption of reliance applies. *See Stearns*, 655 F.3d at 1020–21; *Berger*, 741 F.3d at 1069; *Mazza*, 666 F.3d at 595–96. Can a class definition, which extends membership only to those who were exposed to

alleged misrepresentations, automatically trigger the presumption? We cannot think of any good reason why not, or any evils that allegations and evidence of class-wide dissemination could cure that a class definition cannot.

We similarly decline to grapple with other related questions lurking in the background—including the extent to which a district court must engage with argument or evidence offered to rebut an established presumption of reliance. LSW's appeal concerns a specific issue: whether the district court considered the right questions under the predominance analysis. It does not raise a related issue, which we would review for abuse of discretion if properly raised: whether the district court reached the right answers.

IV

Plaintiffs also challenge the certification decision, arguing that the district court erroneously excluded approximately one quarter of Plaintiffs' desired class, consisting of policyholders who received only batch illustrations and not pre-application illustrations. We do not reach the merits of Plaintiffs' argument, because their attempted appeals of the district court's certification and reconsideration orders are untimely and procedurally improper, respectively.

Appealing a certification decision is usually straightforward: a party must petition this Court for permission to appeal within fourteen days of the district court order. Fed. R. Civ. P. 23(f). We strictly enforce Rule 23(f)'s deadlines to ensure that interlocutory review of certification orders remains a "rare occurrence." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 955 (9th Cir. 2005) (per curiam). The strictures of Rule 23(f) relax in only two scenarios. First, a timely filed motion for

reconsideration extends the deadline for appealing the certification decision. The motion renders the original decision non-final until the district court grants or denies it. *Nutraceutical Corp. v. Lambert*, 139 S. Ct. 710, 717 (2019). The parties then have fourteen days from the reconsideration order to appeal the original certification decision. *See Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1046 (9th Cir. 2015) ("It has long been accepted that the time period to file an appeal generally runs from the denial of a timely motion for reconsideration, rather than from the date of the initial order."); *Nutraceutical*, 139 S. Ct. at 717 (acknowledging that "every Court of Appeals to have considered the question would accept a Rule 23(f) petition filed within 14 days of the resolution of a motion for reconsideration that was itself filed within 14 days of the original order").

Second, if the reconsideration order materially changes the original certification decision, the reconsideration order itself—as distinct from the original decision—becomes appealable. *See infra* § IV(B). Plaintiffs in such a case effectively are entitled to more time to petition for appeal after they file, and the district court rules on, their motion for reconsideration.

## A

Plaintiffs here cannot appeal the district court's original certification order. Plaintiffs moved the court to reconsider its certification order on August 14, thereby rendering the certification order non-final. *See Nutraceutical*, 139 S. Ct. at 717. But the original order became final after the court denied Plaintiffs' reconsideration motion (for failure to satisfy local meet-and-confer requirements), without prejudice, on September 10. The September 10 denial thereafter would have triggered a fourteen-day period, expiring on September 24, within which Plaintiffs could

have appealed the original certification order.  *See Briggs*, 796 F.3d at 1046.  Plaintiffs did not appeal within this period and instead re-noticed their reconsideration motion on September 18.

It is true that the district court permitted Plaintiffs to re-notice their motion.  But that right does not translate into the additional right to file a Rule 23(f) appeal petition beyond the fourteen-day period, which here expired on September 24.  To be clear:  the district court's September 10 order, denying Plaintiffs' improper reconsideration motion without prejudice, cannot extend the Rule 23(f) deadline beyond the fourteen-day period starting from the date of denial.  As a more general rule, a district court's authority to manage its docket does not reach Rule 23(f)'s deliberately harsh deadlines.  *See Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1179 (9th Cir. 2017) (recognizing that appeals courts have routinely held that "a motion for reconsideration filed more than fourteen days after a certification order will not toll the deadline even when the district court set or influenced that deadline"), *rev'd on other grounds*, *Nutraceutical*, 139 S. Ct. 710; *Gutierrez v. Johnson & Johnson*, 523 F.3d 187, 194 n.6 (3d Cir. 2008) ("[W]hile the District Court has the power to control its docket and was well within its authority to extend the time for Petitioners to file their Motion to Reconsider, it did not have the authority to extend the time to file a Rule 23(f) petition.").  And equitable tolling principles will not save an otherwise untimely class-certification appeal.  *Nutraceutical*, 139 S. Ct. at 715.

It is also true that Plaintiffs did re-notice their motion for reconsideration within the fourteen-day window that began when the district court entered its September 10 order.  But only a "timely" motion for reconsideration—filed within

fourteen days of an order denying or granting certification—can extend the fourteen-day appeal period. *See, e.g.*, *Lambert*, 870 F.3d at 1178 ("[A] motion for reconsideration filed within fourteen days of a certification decision tolls the Rule 23(f) deadline."); *accord Gutierrez*, 523 F.3d at 193 ("[A] motion to reconsider a class certification decision that is filed more than [fourteen] days after the order granting or denying class certification is 'untimely' with respect to Rule 23(f) and will not toll the period for filing a Rule 23(f) petition."); *Nucor Corp. v. Brown*, 760 F.3d 341, 343 (4th Cir. 2014); *In re DC Water & Sewer Auth.*, 561 F.3d 494, 496 (D.C. Cir. 2009); *Jenkins v. BellSouth Corp.*, 491 F.3d 1288, 1291–92 (11th Cir. 2007); *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1190–92 (10th Cir. 2006); *McNamara v. Felderhof*, 410 F.3d 277, 281 (5th Cir. 2005); *Gary v. Sheahan*, 188 F.3d 891, 892 (7th Cir. 1999). A motion for reconsideration filed within fourteen days of a prior reconsideration order, as distinct from a certification order, is not "timely" and therefore cannot restart the clock. *See Gary*, 188 F.3d at 893 (Easterbrook, J.) ("A second or successive motion for reconsideration is just a motion filed after [fourteen] days: it does not restart the clock for appellate review."). The practical and, we think, sensible effect of this rule is that litigants may not repeatedly extend Rule 23(f)'s stringent deadlines by re-noticing denied reconsideration motions.

B

Plaintiffs cannot appeal the district court's reconsideration order either. Rule 23(f) allows parties to appeal an "order granting or denying class-action certification." Every circuit to consider the question has interpreted the rule to allow appeals of reconsideration orders—but only those that materially change the original

certification order and thereby affect the status quo. These cases rely on the language of Rule 23(f), holding that an order that leaves the status quo of a prior certification order unchanged neither "grant[s]" nor "den[ies]" class-action certification, as required to render an order appealable under Rule 23(f). *See In re Wholesale Grocery Prods. Antitrust Litig.*, 849 F.3d 761, 765–66 (8th Cir. 2017); *Phillips v. Sheriff of Cook Cty.*, 828 F.3d 541, 559–60 (7th Cir. 2016); *Nucor*, 760 F.3d at 343; *Fleischman v. Albany Med. Ctr.*, 639 F.3d 28, 31–32 (2d Cir. 2011); *In re DC Water & Sewer Auth.*, 561 F.3d at 496–97; *Gutierrez*, 523 F.3d at 193–94; *Jenkins*, 491 F.3d at 1291–92; *Carpenter*, 456 F.3d at 1191; *see also McNamara*, 410 F.3d at 281 (holding that district court reconsideration order "merely reaffirmed its prior ruling" and therefore "was not 'an order . . . granting or denying class action certification' under Rule 23(f)"). Because the only Ninth Circuit decision applying that test is unpublished, *see Lambert v. Nutraceutical Corp.*, 783 F. App'x 720, 723 (9th Cir. 2019) (holding reconsideration order that maintained the status quo of class certification was not itself appealable), we now formally join our sister circuits and adopt the material-change / status-quo test.

The test as applied here bars Plaintiffs from appealing the reconsideration order. Although the district court in its reconsideration order changed its legal analysis, it declined to change its original certification order in any way notwithstanding Plaintiffs' motion: the same class definition controls, the same Plaintiffs make up the class, and the status quo remains unchanged.

Plaintiffs argue they properly appealed the reconsideration order because it contains a rationale for the certification decision not present in the original order. The material-change / status-quo test obviates Plaintiffs'

argument. The cases subscribing to that test demonstrate that our sister circuits concern themselves not with the words used in the reconsideration order, but rather with the order's practical effect on the class. *See, e.g.*, *In re Wholesale Grocery Prods. Antitrust Litig.*, 849 F.3d at 765 (rejecting attempted appeal of reconsideration order that "left the status quo—no class certification for the New England plaintiffs—untouched"); *Carpenter*, 456 F.3d at 1191 ("An order that leaves class-action status unchanged from what was determined by a prior order is not an order 'granting or denying class action certification'" under Rule 23(f).). Only where the district court certifies a class it previously declined to certify, decertifies an existing class, or changes the composition of an existing class—usually by increasing or decreasing its size—will a reconsideration order become appealable. *See, e.g.*, *Matz v. Household Int'l Tax Reduction Inv. Plan*, 687 F.3d 824, 825 (7th Cir. 2012) (allowing appeal of partial decertification order reducing the size of the originally certified class by between 57 and 71 percent); *Glover v. Standard Fed. Bank*, 283 F.3d 953, 959 (8th Cir. 2002) (holding reconsideration order appealable where it "open[ed] up the class to individuals working through an entire network of mortgage brokers across the nation beyond the more limited group"). That did not happen here.

Plaintiffs should have sought to appeal the district court's original certification order by August 14. They should have indicated in their August 14 appeal petition that they had also moved the district court to reconsider its certification order, and that, if appropriate, they would later amend their appeal petition to request that we also consider the district court's reconsideration order. *See, e.g.*, *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1085 (9th Cir. 1989) (concluding that amended appeal notice properly "expand[ed] the factual record on appeal" to include denial

of reconsideration order); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 142 n.1 (4th Cir. 2001) (acknowledging Dryvit's filing of an appeal petition and, later, an amended petition of a class-certification order).  Alternatively, of course, Plaintiffs could have followed the local meet-and-confer requirements when they filed their motion for reconsideration, eliminating the need to re-notice the motion after it was denied, and then filed a timely appeal when the motion was denied on the merits.  Plaintiffs took neither approach and instead gambled their ability to appeal on the possibility that the district court would materially change its original certification decision on reconsideration.  The subsequent reconsideration order maintained the status quo, and so it is not appealable.  Plaintiffs lost their bet.  Rule 23(f) cannot hedge it.

V

We further deny Plaintiffs' motion to take judicial notice of their petition to appeal and LSW's answer thereto. Plaintiffs' briefs appear to rely on some of the facts contained in the petition and answer, which may be subject to "reasonable dispute" and therefore are not judicially noticeable under Federal Rule of Evidence 201(b).  *See Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001) (explaining that a court can take notice of the existence of pleadings, but not the truth of the facts recited therein).

We leave undisturbed the district court's legally sound, if imperfect, certification order.  And we dismiss Plaintiffs' untimely and procedurally improper attempts to appeal.

Each party shall bear its own costs.

**AFFIRMED IN NO. 19-55241, DISMISSED IN NO. 19-55242.**