NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 7 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GEORGE W. WOOLLEY; et al., | No. 20-16608 |
| Plaintiffs-Appellants, | D.C. No. 3:17-cv-01258-LB |
| v. | |
| YGRENE ENERGY FUND, INC.; YGRENE ENERGY FUND FLORIDA, LLC, | MEMORANDUM[*] |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Laurel D. Beeler, Magistrate Judge, Presiding

Argued and Submitted August 9, 2021
San Francisco, California

Before: SILER,[**] CHRISTEN, and FORREST, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge CHRISTEN

Plaintiffs believe the district court abused its discretion in denying their

motion for class certification. We disagree and affirm.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Eugene E. Siler, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

Plaintiffs are former borrowers of "Property Assessed Clean Energy" ("PACE") loans, which, unlike traditional loans, are created as tax liens on a borrower's property. Plaintiffs brought this California statutory and common law fraud action against Defendants ("Ygrene") to rectify alleged misrepresentations about their ability to transfer their loan balances without the payment of Ygrene's alleged "surprise" penalties and fees. The district court correctly identified that Plaintiffs' current class definitions are too broad to certify because individualized questions regarding the reliance element of the fraud action exist to defeat commonality, typicality, and predominance. *See In re Tobacco II Cases*, 207 P.3d 20, 39 (Cal. 2009) ("[T]here is no doubt that reliance is the causal mechanism of fraud. . . . [W]e conclude that [Proposition 64] imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's[, *see* Cal. Bus. & Prof. Code, § 17200 et seq.,] fraud prong." (citation omitted)); *see also* Fed. R. Civ. P. 23(a)(2), (3), (b)(3).

1. Plaintiffs' argument that the district court erred in reconsidering its initial grant of class certification pursuant to local rules and the Federal Rules of Civil Procedure is easily resolved because the "rule [is] that 'as long as a district court has jurisdiction over the case, . . . it possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be

sufficient.'" *City of L.A., Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 889 (9th Cir. 2001) (citation omitted).

2. Next, Plaintiffs argue that the district court should have certified its proposed classes proceeding on a fraudulent omission theory. But they have failed to show class-wide commonality, typicality, and predominance on the issue of actual reliance, which requires proof that "had the [complained-of] omitted information been disclosed, [the putative class members] would have been aware of it and behaved differently." *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (internal quotation marks and citation omitted).

Here, Plaintiffs' proposed classes include "[a]ll persons within the State of California who, during the applicable statute of limitations, entered into a PACE financing agreement originated and/or facilitated by Ygrene in connection with their primary residence who paid" a penalty or fee. Plaintiffs argue that class-wide reliance is common, typical, and predominant through putative class members' exposure to their contracts with Ygrene because each agreement "both misrepresented and omitted material information concerning transferability[,]" and actual reliance can be shown on the class members' exposure to the purported flawed agreements alone. There is no evidence that even the *named* plaintiffs in this case read their loan contracts. Even assuming the loan contract was a common point of guaranteed contact between putative class members and Ygrene because

3

California law presumes that a party who signs a contract has "read it and . . . understands its contents," *Baker v. Italian Maple Holdings, LLC*, 220 Cal. Rptr. 3d 887, 895 n.6 (Ct. App. 2017), the district court still would need to individually determine whether disclosure of the complained-of omissions would have impacted the putative class members' contracting decision. *See Walker v. Life Ins. Co. of the Southwest*, 953 F.3d 624, 630 (9th Cir. 2020) ("In UCL cases, district courts must consider whether class members were exposed to the defendant's alleged misrepresentations, but for a single, critical purpose: establishing reliance."); *Daniel*, 806 F.3d at 1225 ("To prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct.").

As the district court implicitly recognized, Plaintiffs' flawed assumption is that class-wide exposure to a Ygrene PACE loan contract equates to a class-wide showing of actual reliance on the alleged misrepresentations and omissions in such contract about the transferability of the PACE loans without the payment of alleged surprise fees. Where there is no indication that awareness of the written contract terms necessarily did or would have impacted Plaintiffs' decision to enter into the contract, Plaintiffs cannot establish actual reliance on a class-wide basis. To conclude otherwise would be to base a class claim on bare inference stacked on bare inference—that contracting parties are deemed to understand the terms of

4

their contracts, *Baker*, 220 Cal. Rptr. 3d at 895 n.6, and that contracting parties would behave differently if the complained-of omitted terms are ones that a reasonable person would "attach importance to" in deciding whether to contract, *Daniel*, 806 F.3d at 1225.  Under the circumstances presented here, such stacking turns the concept of *actual* reliance on its head.  It was not error for the district court to conclude that it could not certify a class action based solely on a contractual misrepresentation or omission about surprise fees because the individual issue of each class member's reliance on that purported misrepresentation or a proper representation will dominate the issue of the actionability of that misrepresentation or omission.

Plaintiffs' use of *Walker v. Life Insurance Co. of the Southwest* is inapposite here because *Walker* did not hold that when all putative class members receive a document containing a uniform misrepresentation, there can never be individualized questions of actual exposure to that misrepresentation sufficient to defeat class action certification.

3.      Finally, Plaintiffs argue that class-wide reliance is common, typical, and predominant through Ygrene's alleged "pervasive" marketing/advertising campaign or at least because Plaintiffs showed class-wide exposure to that campaign.  *See Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 595–96 (9th Cir. 2012) ("[T]he California Supreme Court [in *Tobacco II*] reconfirmed that class

5

members do not need to demonstrate individualized reliance, and that Proposition 64 imposes its reliance requirements only on the named plaintiff, not unnamed class members . . . . In the absence of the kind of massive advertising campaign at issue in *Tobacco II*, the relevant class must be defined in such a way as to include only members who were exposed to advertising that is alleged to be materially misleading.").

Attempting to satisfy their burden of showing the requisite marketing or advertising campaign described in *Tobacco II*, Plaintiffs enumerate several purported Ygrene channels of communication with the public that purportedly serve as evidence of such a campaign. But as Ygrene points out, Plaintiffs "failed to introduce evidence on . . . the size, scope, or reach of" those channels of communication or "the prevalence of transferability statements" in those channels of communication. Plaintiffs have not shown the extent of the interaction between each of Ygrene's channels of communication with the general public or even just with putative class members, or, at the very least, the kind of "pervasive" marketing campaign at issue in *Tobacco II*.

**AFFIRMED**.

*Woolley v. Ygrene Energy Fund, Inc.*, No. 20-16608
CHRISTEN, Circuit Judge, concurring in part and dissenting in part.

I

I agree with my colleagues that the district court correctly denied Plaintiffs' motion for class certification premised on Plaintiffs' "pervasive" marketing theory. I write separately because I disagree with my colleagues' conclusion that putative class members' exposure to, and acceptance of, the terms of their written and executed contracts with Ygrene could not satisfy Plaintiffs' obligation to establish class-wide reliance that is common, typical, and predominant. In my view, that portion of my colleagues' ruling is contrary to well-established California law "that a party who signs a document is presumed to have read it and to understand its contents," *Baker v. Italian Maple Holdings, LLC*, 220 Cal. Rptr. 3d 887, 895 n.6 (Ct. App. 2017), and it is contrary to our court's precedent in *Walker v. Life Insurance Co. of the Southwest*, 953 F.3d 624 (9th Cir. 2020). In *Walker*, we held that "a class definition, which extends membership only to those who were exposed to alleged misrepresentations" may "automatically trigger" a presumption of reliance. *Id.* at 634. The district court did not consider whether Plaintiffs' proposed class definitions allow for "a presumption of reliance" on the alleged misrepresentations or omissions in the written contracts that the class members entered into with Ygrene. Because I would remand for the district court to

consider in the first instance whether reliance can be presumed in this circumstance, I respectfully dissent from the portion of the court's disposition that addresses claims premised on the class members' written contracts.