Filed 8/6/21  Tuttle v. Nalco Co. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| FRED TUTTLE, | |
| Plaintiff and Respondent, | G058980 |
| v. | (Super. Ct. No. 30-2018-01024863) |
| NALCO COMPANY, LLC, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Robert J. Moss, Judge.  Reversed and remanded.

Fisher & Phillips, Grace Y. Horoupian, Christopher M. Ahearn and Raymond W. Duer for Defendant and Appellant.

Barritt Smith Miner and Perry G. Smith for Defendant and Respondent.

\*          \*          \*

Nalco Company, LLC (Nalco) appeals from an order denying its motion to compel Fred Tuttle's employment claims to arbitration. The trial court denied the motion based on Nalco's failure to prove the existence of an agreement to arbitrate the controversy. We conclude Nalco met its initial burden and therefore reverse.

As we explain below, a party moving to compel arbitration may meet its initial burden to prove the existence of an agreement to arbitrate simply by attaching a copy of the arbitration agreement to its motion. The burden then shifts to the opposing party to present any challenges to the enforcement of the agreement. If the opposing party challenges the authenticity of the agreement or its signatures, the burden shifts back to the moving party to establish by a preponderance of the evidence that the agreement and signatures are authentic. But if the opposing party does not dispute the authenticity of the arbitration agreement or the signatures, the moving party need not take further steps to authenticate either.

In this case, Nalco met its initial burden when it filed with the trial court a 2014 arbitration agreement between Tuttle and the company that acquired Nalco in 2011. Although Nalco is neither a signatory to nor mentioned in that arbitration agreement, the agreement expressly obligates Tuttle to arbitrate all employment-related claims between Tuttle and any of the acquiring company's business units, including Nalco.

In opposing Nalco's motion, Tuttle never denied electronically signing that arbitration agreement with the acquiring company; nor did he deny agreeing to sign the agreement electronically. Instead, he argued that Nalco failed to establish the existence of an agreement between him and *Nalco*; and that Nalco, as a nonsignatory to the arbitration agreement with the acquiring company, lacked the ability to enforce that arbitration agreement against him.

On this record, the trial court had no basis to question the proffered arbitration agreement's authenticity based on Tuttle's response. Nalco met its initial burden by attaching a copy of the agreement to its motion to compel; since Tuttle never

2

denied signing the agreement, Nalco had no further obligation to authenticate it.  We therefore reverse the order denying Nalco's motion to compel arbitration and remand this matter for further proceedings.

**FACTS**

Tuttle began working for Nalco in 1979.  In 2011, Nalco was acquired by Ecolab, Inc. (Ecolab).  Since then, Nalco has operated as a business unit of Ecolab, conducting business under the name Nalco.

In 2018, Tuttle filed a complaint against Nalco for disability discrimination, age discrimination, and other alleged violations of the Fair Employment and Housing Act (Govt. Code, § 12940).  He did not name Ecolab as a defendant.

After answering the complaint, Nalco filed a motion to compel arbitration based on an arbitration agreement that Tuttle had allegedly entered into electronically with Ecolab in 2014.  Nalco is not mentioned by name in that agreement, and Nalco's original moving papers did not endeavor to explain the relationship between Nalco and Ecolab, aside from asserting in a footnote, without citation to any evidence, that Nalco and Ecolab "merged" in 2011 and "are one and the same" for "all intents and purposes."

In support of its motion to compel arbitration, Nalco submitted a declaration by Ecolab's director of human resources (HR director), who explained she has held that position since 2018, is familiar with Ecolab's employment practices and arbitration agreements, and has access to and is able to review employee personnel files. She then described Ecolab's October 2014 rollout of its Ecolab Associate Resolution Resources (EARR) program, which included an online training module on mediation and arbitration, followed by an arbitration agreement that employees were asked to review and sign as a condition of continued employment.  According to the HR director, employees accessed the EARR training module online using their Ecolab e-mails, user names, and individual confidential passwords, and after completing the training, they had

3

an opportunity to sign the arbitration agreement electronically. They did so by clicking "Agree"; they then received a confirmation e-mail that included the text of the arbitration agreement.

The HR director further attested that she reviewed Tuttle's employee records and located Ecolab's internal training record confirming Tuttle's October 13, 2014 completion of the EARR course, as well as Ecolab's October 13, 2014 e-mail to Tuttle confirming his acceptance of the Ecolab arbitration agreement. The exhibits attached to her declaration included the EARR program training materials, Ecolab's internal record confirming Tuttle's completion of the EARR course, and Ecolab's e-mail to Tuttle confirming his acceptance of the Ecolab arbitration agreement, among other documents. The arbitration agreement e-mailed to Tuttle stated, among other things, that "continued employment constitutes assent by [Tuttle] and the Company to be bound by the Agreement, both during the employment and after termination of employment."[1]

Tuttle opposed Nalco's motion to compel, asserting Nalco had failed to establish the existence of an agreement between him and *Nalco*. He argued his arbitration agreement was only with Ecolab and did not mention Nalco; and as a nonsignatory, Nalco lacked the ability to enforce an arbitration agreement between him and Ecolab. Tuttle also objected to the HR director's declaration for lack of foundation and personal knowledge.

Tuttle did not deny completing the EARR training module; he did not deny electronically signing the Ecolab arbitration agreement or clicking "Accept" or "Agree" at the conclusion of the training module; he did not deny agreeing to arbitration; he did not allege Ecolab's records of his agreement to arbitrate were forged, falsified, or

---

[1] Nalco's exhibits in support of its motion to compel arbitration did not include a copy of the arbitration agreement bearing Tuttle's electronic signature. The EARR module explained an employee electronically signs by "clicking on the 'Accept' button" (not by typing his or her name on the agreement).

4

otherwise inaccurate; he did not claim he could not read or understand the arbitration agreement; he did not claim he lacked sufficient time to review the agreement; and he did not deny receiving Ecolab's October 13, 2014 e-mail confirming his acceptance of the Ecolab arbitration agreement. In fact, Tuttle did not submit a declaration or other evidence in opposition to the motion.

Tuttle also did not assert the agreement was in any way unconscionable, nor did he argue Nalco's evidence confirming his electronic signature was untrustworthy or otherwise insufficient under the Uniform Electronic Transactions Act (Civ. Code, § 1633.9).

At the hearing on the motion, the trial court stated its tentative ruling was to deny the motion because the proffered arbitration agreement was between Tuttle and Ecolab, not Nalco. After further discussion with the parties, however, the court continued the hearing to allow the parties to submit supplemental briefing and evidence on the relationship between Nalco and Ecolab.

Nalco filed a declaration by Ecolab's chief compliance officer and chief employment counsel, who explained that Ecolab acquired Nalco in 2011, at which point all Nalco employees became employees of Ecolab; that Nalco continues to operate as a business unit of Ecolab and conducts business under the name Nalco; and that when Tuttle electronically signed the Ecolab arbitration agreement in 2014, he was an employee of Ecolab working in the Nalco business unit. Nalco also filed a request for judicial notice of Ecolab's 2011 Form 10-Q and Form 10-K, which described Ecolab's 2011 merger with Nalco Holding Company, and which Ecolab filed with the United States Securities and Exchange Commission (SEC).

In its supplemental briefing, Nalco explained the Ecolab arbitration agreement applies to Tuttle's claims against Nalco because the agreement requires all claims between Tuttle "and the Company . . . arising out of or in any way related to . . . employment" to be submitted to arbitration, and because the agreement defined the

5

"'Company'" to include "Ecolab and its subsidiaries, divisions, and business units." Thus, contended Nalco, Tuttle's employment-related claims against Nalco, an Ecolab business unit, must be compelled to arbitration.

Tuttle filed a one-page supplemental opposition, asserting the declaration by Ecolab's chief compliance officer and chief employment counsel failed for lack of personal knowledge and lacked foundation, and Nalco still had not met its burden to establish an agreement to arbitrate between Tuttle and Nalco. Tuttle did not present any evidence disputing the business relationship between Nalco and Ecolab; as before, he did not challenge the authenticity of the Ecolab arbitration agreement.

The trial court issued a tentative ruling granting Nalco's request for judicial notice and finding Nalco "presented sufficient evidence showing Mr. Tuttle was an employee of Ecolab"; however, it tentatively denied Nalco's motion to compel arbitration, finding "there is insufficient evidence authenticating he electronically signed an arbitration agreement."

After oral argument, the trial court stuck with its tentative ruling and denied Nalco's motion, finding a lack of evidence that Tuttle signed the Ecolab arbitration agreement, electronically or otherwise, and explaining there was no indication Tuttle ever actually pushed the "Agree" button after completing the EARR training module. The court did not rule on Tuttle's evidentiary objections.

A month later, the trial court adopted, without change, Tuttle's proposed statement of decision denying the motion, finding Nalco "failed to provide evidence of the existence or validity of Tuttle's agreement to proceed by electronic means and to arbitrate his claims." The court noted there was no evidence Tuttle actually signed the agreement; in the court's view, the e-mail confirmation of his agreement and the training record were insufficient to establish execution. The court granted Nalco's request for judicial notice of its SEC filings; it sustained Tuttle's objections to the declarations by Ecolab's HR director and its chief employment counsel for lack of foundation.

6

Nalco appeals, challenging both the evidentiary rulings and the denial of its motion to compel arbitration.

## DISCUSSION

"We review an order denying a petition to compel arbitration for abuse of discretion unless a pure question of law is presented. In that case, the order is reviewed de novo." (*Espejo v. Southern California Permanente Medical Group* (2016) 246 Cal.App.4th 1047, 1056-1057 (*Espejo*), review denied Aug. 17, 2016.) Questions concerning the burden of proof on a motion to compel arbitration and the method of authentication of the purported arbitration agreement are legal issues subject to de novo review (see *id.* at p. 1057), as are questions concerning a party's standing to enforce the arbitration agreement (*Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 857). We review the trial court's evidentiary rulings for abuse of discretion. (*Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 446-447.)

The parties in this case have spent a great deal of ink, both in the trial court and here on appeal, debating what Nalco's burden of proof was on its motion to compel arbitration and whether the burden ever shifted to Tuttle. Accordingly, before turning to Nalco's arguments, we begin with an overview of the various burdens at play when a party moves to compel arbitration.

A petition to compel arbitration must "alleg[e] the existence of a written agreement to arbitrate a controversy." (Code Civ. Proc., § 1281.2.) It also "must state, in addition to other required allegations, the provisions of the written agreement and the paragraph that provides for arbitration. The provisions must be stated verbatim or a copy must be physically or electronically attached to the petition and incorporated by reference." (Cal. Rules of Court, rule 3.1330.)

"When presented with a petition to compel arbitration, the initial issue before the [trial] court is whether an agreement has been formed." (*Diaz v. Sohnen*

7

*Enterprises* (2019) 34 Cal.App.5th 126, 129.)  The court "must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable."  (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 413 (*Rosenthal*).)

General principles of contract law determine whether the parties have entered a binding agreement to arbitrate.  (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236 (*Pinnacle*).)  Although the agreement generally must be memorialized in writing, a signed agreement is not necessary, and a party's acceptance may be implied in fact.  (*Ibid.*)  The petitioner bears the burden of proving the existence of an arbitration agreement by a preponderance of the evidence.  (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972 (*Engalla*); *Rosenthal, supra,* 14 Cal.4th at p. 413.)

It is well settled that a party seeking arbitration "may meet [its] *initial* burden to show an agreement to arbitrate by attaching a copy of the arbitration agreement purportedly bearing the opposing party's signature . . . in compliance with the requirements of [Code of Civil Procedure] section 1281.2 and California Rules of Court, rule 3.1330."  (*Espejo, supra,* 246 Cal.App.4th at p. 1060; see *Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 543-544 (*Bannister*) ["The party seeking arbitration can meet its initial burden by attaching to the petition a copy of the arbitration agreement purporting to bear the respondent's signature"]; *Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1067 (*Fabian*) [moving party "met its initial burden to show an agreement to arbitrate by attaching a copy of the [c]ontract to its petition, which purportedly bears [the plaintiff's] electronic initials and signature"]; *Baker v. Italian Maple Holdings, LLC* (2017) 13 Cal.App.5th 1152, 1160 (*Baker*) ["With respect to the moving party's burden to provide evidence of the *existence* of an agreement to arbitrate, it is generally sufficient for that party to present a copy of the contract to the court"]; *Hotels Nevada v. L.A. Pacific Center, Inc.* (2006) 144 Cal.App.4th 754, 765 [moving

8

party "may meet its burden by complying with California Rules of Court," citing former rule 371; thus appellant carried its burden by quoting arbitration clause in its motion].)

In other words, the "petitioner is not required to authenticate an opposing party's signature on an arbitration agreement *as a preliminary matter* in moving for arbitration." (*Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 846 (*Ruiz*).) As one treatise puts it, "for purposes of the petition, it is not necessary to follow the normal procedures for document authentication. C[ode of Civil Procedure section] 1281.2 does not require the petitioner to introduce the agreement into evidence. As a preliminary matter, the court is only required to make a finding that the agreement exists, not an evidentiary determination of its validity." (6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 524, p. 997.)

"Once [a copy of the arbitration agreement] is presented to the court, the burden shifts to the party opposing the motion to compel, who may present any challenges to the enforcement of the agreement and evidence in support of those challenges." (*Baker*, *supra*, 13 Cal.App.5th at p. 1160.) The party opposing arbitration bears the burden of proving any defense to enforcement, such as unconscionability, fraud, waiver, or revocation, by a preponderance of the evidence. (*Engalla, supra,* 15 Cal.4th at p. 972; see *Pinnacle, supra,* 55 Cal.4th at p. 236.)

If the opposing party challenges the authenticity of the signature on the arbitration agreement in his or her opposition, the burden shifts back to the moving party to "establish by a preponderance of the evidence that the signature was authentic." (*Bannister, supra*, 64 Cal.App.5th at p. 544; *Espejo, supra*, 246 Cal.App.4th at p. 1060; see, e.g., *Fabian, supra,* 42 Cal.App.5th at p. 1067 [plaintiff declared in opposition that she did not sign the arbitration agreement, so defendant had burden of proving electronic signature was authentic]; *Ruiz, supra*, 232 Cal.App.4th at p. 846 [defendant "had the burden of proving by a preponderance of the evidence that the electronic signature was authentic" because plaintiff attested he could not recall signing the contract]; see also

9

Weil & Brown, Cal. Practice Guide:  Civil Procedure Before Trial (The Rutter Group) ¶ 9:407.5, p. 9(I)-187 ["If challenged, the petitioner must prove the contract is authentic, including the authenticity of the signatures"].)  If needed, the moving party may then provide additional evidence authenticating the signature by filing a supplemental declaration with its reply memorandum.  (*Espejo,* at pp. 1056, 1060; see also *id.* at pp. 1061-1063 [discussing ways to authenticate electronic signature under Civil Code section 1633.9 and the Uniform Electronic Transactions Act].)

But, as this court previously has recognized, if the opposing party does not dispute the authenticity of his or her signature on the arbitration agreement in his or her opposition, the moving party need not take further steps to authenticate the signature. (*Condee v. Longwood Management Corp*. (2001) 88 Cal.App.4th 215, 218-219 [where opposing party never challenged signature on arbitration agreement, trial court erred in denying petition to compel arbitration based on movant's failure to authenticate signature]; see *Ruiz, supra,* 232 Cal.App.4th at p. 846 ["Properly understood, *Condee* holds that a petitioner is not required to authenticate an opposing party's signature on an arbitration agreement . . . in the event the authenticity of the signature is not challenged"]; *Nanavati v. Adecco USA, Inc*. (N.D.Cal. 2015) 99 F.Supp.3d 1072, 1076, fn. 3 ["Plaintiff did not contest the validity of the Agreement and, as such, Defendant was not required to authenticate his signature as a preliminary matter"]; see also *Espejo*, *supra*, 246 Cal.App.4th at pp. 1058-1060 [collecting cases that "have followed *Condee* in analyzing the petitioner's initial burden under [Code Civ. Proc.,] section 1281.2"].)[2]

---

[2]    Ignoring the many authorities that have followed our decision in *Condee*, Tuttle insists a different panel of this court later "limited" *Condee* in *Toal v. Tardif* (2009) 178 Cal.App.4th 1208 (*Toal*).  The trial court also relied on *Toal* in its statement of decision.

Tuttle overestimates the significance of *Toal*.  In *Toal*, the issue was whether the signatures of *the parties' attorneys* on an agreement to arbitrate constituted substantial evidence that the parties agreed to arbitrate; we held they did not, explaining a

10

Likewise, if the opposing party does not dispute the authenticity of the arbitration agreement, the petitioner need not take further steps to authenticate the agreement. (See *Garcia v. Haralambos Beverage Co.* (2021) 59 Cal.App.5th 534, 542 ["unless there is a dispute over authenticity, it is sufficient for a party moving to compel arbitration to recite the terms of the governing provision"]; *Sprunk v. Prisma LLC* (2017) 14 Cal.App.5th 785, 793 [same]; *Laymon v. J. Rockcliff, Inc.* (2017) 12 Cal.App.5th 812, 824 [where defendants produced arbitration agreements and plaintiffs did not dispute their genuineness, "defendants carried their burden of demonstrating a valid agreement to arbitrate"].)

Applying those authorities here, and after independently reviewing the record, we conclude Nalco met its initial burden to show an agreement to arbitrate by filing a copy of the Ecolab arbitration agreement with its motion to compel arbitration. The burden then shifted to Tuttle to present any challenges to the enforcement of that agreement. Tuttle could have denied signing the agreement, denied consenting to sign

---

party "does *not* meet the burden of proving the existence of a valid arbitration contract simply by submitting a copy of the contract signed by a party's attorney rather than by the party personally." (*Toal, supra,* 178 Cal.App.4th at pp. 1222-1223.) In support of our holding, we cited the Supreme Court's decision in *Rosenthal* that "'the petitioner bears the burden of proving its existence by a preponderance of the evidence.'" (*Id.* at p. 1219.) We also observed in a footnote that "[t]o the extent *Condee* conflicts with *Rosenthal*, our Supreme Court's decision is controlling." (*Id.* at p. 1219, fn. 8.)

In reviewing the matter anew, we are not persuaded that *Condee* conflicts with our Supreme Court's holding in *Rosenthal*. The *Rosenthal* court did not specifically address the sufficiency of the initial petition to compel arbitration, and many subsequent cases have cited both *Condee* and *Rosenthal* in describing the parties' burdens on a motion to compel arbitration. (See, e.g., *Espejo, supra*, 246 Cal.App.4th at pp. 1057-1060; *Ruiz, supra*, 232 Cal.App.4th at pp. 842, 846.) In any event, the *Toal* case ultimately has no bearing on the question here, which is whether Nalco met its initial burden to show an agreement to arbitrate by attaching a copy of the arbitration agreement to its petition. (See also *Espejo, supra,* 246 Cal.App.4th at pp. 1059-1060 [distinguishing *Toal* on same basis].)

11

electronically, or attested in his opposition he did not remember signing the agreement, and provided a declaration to that effect. But he did not. Instead, he argued that Nalco failed to meet its burden to establish the existence of an agreement between him and Nalco; and that Nalco, as a nonsignatory to the Ecolab arbitration agreement, lacked the ability to enforce that arbitration agreement against him.

Because Tuttle never challenged the authenticity of either the Ecolab arbitration agreement or its records of his electronic signature, Nalco was under no obligation to authenticate either. Tuttle cannot attack the lack or insufficiency of evidence of his electronic signature for the first time on appeal; the time to raise those issues was in his opposition to Nalco's motion to compel.

We therefore reverse the trial court's order denying Nalco's motion to compel arbitration and remand this matter for further proceedings. On remand, the court may consider, among other matters, whether the Ecolob arbitration agreement applies to Tuttle's claims against Nalco, and whether Nalco, as a nonsignatory, can enforce that agreement (whether under the doctrine of equitable estoppel or on some other grounds).[3]

---

[3] As noted, the trial court sustained Tuttle's objections to the declaration of Ecolab's chief compliance officer and chief employment counsel, who attested to Ecolab's relationship with Nalco and Tuttle's status as an employee of Ecolab, finding the declaration failed for lack of foundation and lack of personal knowledge. This was error. A publicly traded company's chief compliance officer and chief employment counsel would generally have sufficient knowledge on such matters to provide factual information in these areas. We find nothing in this record to suggest this individual's statements were subject to foundational objections.

Because Nalco was not required to authenticate the arbitration agreement under the circumstances, we need not address whether the trial court abused its discretion in sustaining Tuttle's objections to the declaration of Ecolab's HR director authenticating the agreement.

12

## DISPOSITION

We reverse the trial court's order denying arbitration and remand this matter for further proceedings consistent with this opinion.  Appellant is entitled to recover its costs on appeal.


GOETHALS, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


THOMPSON, J.